ALEXANDRIA MINING AND EXPLORING COMPANY *v.*
IRISH, ADMINISTRATOR.

[No. 1,994. Filed Sept. 25, 1896. Rehearing denied Dec. 30, 1896.]

COMPLAINT.—*Negligence.— Proximate Cause.— Sufficiency of Averments of Negligence Constituting the Proximate Cause of the Injury.—Death by Natural Gas Explosion.*—A complaint against a natural gas company which avers that defendant negligently and knowingly suffered its pipe lines to become rusted and rotten and incapable of controlling and retaining the natural gas thereby conveyed, and continued to use such pipes for the purpose of conveying gas when it knew same to be in such defective condition, and that by reason of such negligence one of its pipes sprung a leak at a point in front of the building in which plaintiff's intestate was engaged in working and permitted gas to escape and be discharged into the earth through which it permeated and found its way, accumulating in large quantities beneath and into the said building, and exploding when it came in contact with fire, by force of which explosion such building was blown down, causing the death of plaintiff's intestate, sufficiently charges that defendant's negligence was the proximate cause of the death of plaintiff's intestate. *pp. 537–540.*

Alexandria Mining and Exploring Company *v.* Irish, Administrator.

EVIDENCE.—*Judicial Notice.*— *Explosive Quality of Natural Gas.*—
Courts know judicially that natural gas is highly explosive and
combustible, and that it will explode when ignited by fire.   *p. 540.*

NATURAL GAS.—*Duty of Natural Gas Companies.*—It is the duty of
a natural gas company to so operate its pipes as to prevent the
escape of gas therefrom in such quantities as to become dangerous
to life and property.   *p. 540.*

COMPLAINT.—*Negligence.*—*Necessary Averments as to Freedom from
Fault.*—In an action for damages based upon the negligence of de-
fendant, a general averment of freedom from negligence on part
of plaintiff is sufficient, unless the court can say from the facts
pleaded, as a matter of law, that plaintiff contributed to his injury.
*pp. 541, 542.*

PROXIMATE CAUSE.— *Escape of Natural Gas.*—*Defective Gas Pipes.*
—The bursting of a pipe line used to convey natural gas, the escape
of gas therefrom, and the penetration thereof through the earth be-
neath and into a building adjacent thereto, were the natural and
proximate results of the use of weak and inferior gas pipes and al-
lowing gas to flow into them at a high and dangerous pressure.
*pp. 542–545.*

SAME—*Negligence May be the Proximate Cause Although not the Imme-
diate Cause.*—The negligence of the defendant must be the proxi-
mate cause of the injury, and it is the proximate cause thereof if it
can be properly said to have produced the result complained of, in
natural and continuous sequence, unbroken by any efficient inter-
vening cause.   The negligence charged may be the proximate
cause, although not the immediate one; it is enough if it be the ef-
ficient cause which set in motion the chain of circumstances lead-
ing up to the injury.   *p. 546.*

VERDICT.—*Special Verdict Must Contain a Finding of Every Ulti-
mate Fact.*— *Evidentiary Facts Disregarded.*— A special verdict
must contain a finding of every ultimate fact necessary to a recov-
ery before a judgment rendered upon it will stand; evidentiary facts
and facts beyond the issues must be disregarded and nothing will
be taken by intendment.  *pp. 546, 547.*

NATURAL GAS COMPANIES.— *Failure to Test Pipes.— Statute Con-
strued.*—Under the provisions of section 7507, Burns' R. S. 1894, *et
seq.*, that natural gas companies shall conduct gas only through
sound wrought, or cast iron pipes and casings, tested to a pressure of
at least 400 pounds to the square inch, and that such companies shall
not convey natural gas through such pipes and casings at a pressure
exceeding 300 pounds per square inch, the failure of such company
to test its pipes to a pressure of at least 300 pounds is in violation
of said statute and such company is thereby guilty of negligence for
which it is answerable in damages for all resulting injuries. *p. 548.*

Alexandria Mining and Exploring Company v. Irish, Administrator.

VERDICT.—*Variance Between Special Verdict and Pleading.*—In an action against a natural gas company for death caused by an explosion of natural gas which had escaped from the company's pipes in the street, an averment in the complaint that the house in which the explosion occurred was located on the west side of the street and·a finding in the special verdict that such house was on the east side of the street do not constitute a material variance. *p. 549.*

SAME.—*Knowledge on Part of Injured Party of Danger.— Gas Escaping from Pipes.—Death from Explosion of Natural Gas.*—A special verdict in an action against a natural gas company for the death of plaintiff's intestate resulting from an explosion of natural gas in a building occupied by intestate as a barber shop, which shows that the deceased was lawfully occupying such building, and which fairly discloses that deceased was free from fault, need not find that deceased had no knowledge of the dangerous and defective condition of defendant's pipe lines and did not know that the same had burst and gas was escaping therefrom. *p. 550.*

SAME.—*Special Verdict.—Not Necessary That Verdict Show Date of Death of Deceased.*—Where there was no issue as to the operation of any statute of limitations, it is immaterial that a special verdict does not show with certainty that the death of plaintiff's intestate, for which suit was brought, did not occur on the day alleged in the complaint. *p. 550.*

WITNESS.—*Competency of Widow of Deceased.*— The widow · may testify as a witness in an action brought by the administrator for the negligent killing of her husband. *p. 553.*

EVIDENCE.—*Natural Gas Explosion.— Defective Pipes.— Practice.*— In an action against a natural gas company for death caused by an explosion of gas escaping from its pipe in the street by reason of alleged defects in such pipe at a certain point, evidence of defects in such pipe line at other points, although not discovered until after such explosion, was admissible as tending to show that the condition of the pipe at the time of the examination, or when the condition was observed, was such as to indicate that the defects had existed prior to the time of the injury complained of. *pp. 553, 554.*

SAME.—*Natural Gas Explosion.—Practice.*—When the gas company introduces evidence of an explosion subsequent to the one for which it is sought to be held responsible, it cannot question the competency of other evidence as to such explosion, introduced for the purpose of showing the condition of the pipe at the time of the explosion in question, although the evidence introduced by it was for another purpose. *p. 554.*

SAME.—*Natural Gas Explosion.— Notice of Unsafe Condition of Pipes.*—As tending to prove notice to a natural gas company of the unsafe condition of its pipe line, in an action for death resulting

Alexandria Mining and Exploring Company *v.* Irish, Administrator.

from an explosion of gas escaping from its pipes, it was proper for plaintiff to show by the mayor of the city in which the lines were located that before the explosion he informed one of defendant's men, who had control of the line, of the unsafe condition of the pipes and that he thought the high pressure line should be taken up. *p. 554.*

From the Tipton Circuit Court. *Affirmed.*

*W. A. Kittinger, E. D. Reardon, A. C. Carver, E. G. Ballard, E. B. McMahan* and *W. S. Diven,* for appellant.

*W. F. Edwards, C. K. Bagot* and *T. Bagot,* for appellee.

REINHARD, J.—This action was instituted by the appellee against the appellant, in the Madison Circuit Court, to recover damages on account of the death of the appellee's intestate, through the alleged negligence of the appellant. The venue of the cause was changed to the Tipton Circuit Court where there was a trial by jury and a special verdict, upon which the court rendered judgment in favor of appellee for $3,250.00.

The complaint is in four paragraphs and to each of these a demurrer was filed and overruled, which ruling is assigned as error. The special verdict discloses that it is not founded upon the averments of the third paragraph of the complaint, and, hence, that paragraph may be treated as being out of the case.

The first paragraph of the complaint alleges, among other things, that the defendant was and is a corporation, organized and existing under the laws of the State of Indiana, for the purpose and object of digging, boring and drilling for natural gas and furnishing the same for fuel and light for hire to the general public, and with its principal office and plant in said city of Alexandria, Indiana; and that on the 31st day of March, 1894, and long prior thereto, the said de-

fendant corporation had, owned and operated, for use in its said business in and about said city of Alexandria, a large number of natural gas wells from which the said natural gas used in its said business was supplied; and that for the purpose and object of furnishing gas to its consumers, the corporation owned and operated a system of underground pipe lines connected with its wells and extending through and upon the streets of said city; "that two of said pipe lines ran and extended through, upon and along Canal street in said city; and upon the west side of said Canal street there was a brick block or building, known as the F. N. Whitesides Block, and that said pipe line was extended and passed in front of said building at a distance of about thirty-one feet from the front and east side of said building."

Said paragraph further alleges that on the 31st day of March, and prior thereto, the defendant had negligently and carelessly and knowingly permitted and allowed its said pipe lines to become and remain in bad repair, and had negligently and carelessly permitted the pipe lines in front of said building to become rusted, rotten and incapable of controlling and retaining the natural gas contained therein and conveyed thereby, and permitted the same to become and remain in an unsafe and dangerous condition, and in so continuing to use the same as aforesaid; that the defendant at the time and long prior to the 31st day of March, 1894, had full knowledge and notice of the rusted, rotten and unsafe and dangerous condition of said pipe lines at said point; and that said decedent was twenty-seven years old, and left surviving him his widow and one child, a girl of the age of seven years, both of whom were dependent upon him for maintenance and support, and are still living; "that on the —— day of May, 1895, this plaintiff was duly ap-

Alexandria Mining and Exploring Company v. Irish, Administrator.

pointed by the Madison Circuit Court, administrator
of the estate of said decedent; and that by reason of
the death of said decedent as aforesaid, the said
widow and child were damaged in the sum of ten
thousand dollars."

It is contended by appellant's counsel that this
pleading is insufficient, because it contains "no aver-
ment of any negligence on the part of the appellant
as to acts that were the proximate cause of death:
i. e., there is no averment of negligence in appellant,
either by general averment or by averring directly
that appellant had knowledge that its pipe line had
sprung a leak on Canal street, or that it knew gas was
escaping and percolating the earth; or that it is
chargeable with knowledge that its main sprung a
leak, gas escaped and traveled four feet to a building
and under the walls of the building, etc.   And no
charge of any negligence in appellant in such gas
coming in contact with fire," etc.

In this contention we think counsel are in error.
The averment is sufficiently plain and certain that the
appellant negligently and knowingly suffered its pipe
lines to become rusted and rotten and incapable of
controlling and retaining the natural gas contained
therein and conveyed thereby, and continued to use
said pipes for the purpose of conveying gas therein
when it knew them to be in such defective condition,
and that by reason of such carelessness and negli-
gence one of said pipes, on the 31st day of March, 1894,
broke and sprung a leak at a point in front of the
building in which appellee's intestate was engaged in
working, at his usual occupation, and permitted the
gas to escape and be discharged into the earth which
it permeated and found its way through, accumulat-
ing in large quantities beneath and in the said build-
ing, and exploding when it came in contact with fire,

by force of which explosion said building was shattered, blown down, and totally wrecked and destroyed, causing the appellee's intestate to be buried beneath the debris and to be burned by the fire which immediately followed the said explosion, and to be injured, from the effects of which he then and there died.

The proximate cause of the death of appellee's intestate is here charged to be the negligence of the appellant in knowingly permitting its pipes to become defective and out of order, in consequence of which, a leak was sprung, thus allowing the gas to escape and explode when coming in contact with fire.

Courts know judicially that natural gas is highly explosive and combustible, and that it will explode when ignited by fire. *Indiana Natural Gas and Oil Co.* v. *Jones*, 14 Ind. App. 55, and cases cited. And it was the duty of the appellant to so operate its pipes as to prevent the escape of gas therefrom in such quantities as to become dangerous to life and property. *Mississinewa Mining Co.* v. *Patton*, 129 Ind. 472, 27 Am. St. 203.

The complaint discloses a clear violation of the duty mentioned, and if such violation of duty is shown to have been the proximate cause of the death of appellee's intestate, the appellant is liable. *McGahan* v. *Indianapolis Natural Gas Co.*, 140 Ind. 335, 49 Am. St. 199, 29 L. R. A. 355.

It is not shown how there happened to be any fire at the point where the explosion occurred, nor the manner in which it took place, and it may be argued with some degree of plausibility that there might have been some intervening agency for which the appellant was not responsible, which was the more immediate cause of the explosion. See *McGahan* v. *Indianapolis Natural Gas Co.*, *supra*. But the place where the gas is charged to have come in contact with the fire is

shown to have been in or about the building in which the deceased was engaged in his daily business,—a place where fire is used for illuminating, and other purposes, constantly, and the explosion by such means was one of the results which the appellant was bound to anticipate in the operation of its gas mains. The complaint might be subject to a motion to make more specific in this regard, but we think it is sufficient to withstand the demurrer.

In *Mississincwa Mining Co.* v. *Patton, supra,* the complaint charged that the escaping gas came in contact with a lighted lamp in the dwelling house, and, without plaintiff's fault, exploded and set fire to and destroyed plaintiff's building and contents, without showing how the lamp came to be lighted, or other particulars indicating the absence of any intervening agency, but the complaint was held sufficient by the Supreme Court.

It was not necessary to aver that appellant knew that gas was escaping from the broken pipes and percolating through the ground to the place of the explosion. If the appellant had knowledge of the imperfect condition of the pipes, as charged, it was bound to know also that gas would escape. This was one of the natural results of the appellant's negligence and for these, it is responsible.

It is next insisted that the pleading is fatally defective in failing to charge that the appellee was free from contributory fault. It is averred generally that the appellee's intestate, by reason of the negligent acts of the appellant of knowingly allowing its pipe lines to become rotten and broken and out of order, whereby the gas escaped and the explosion followed, the intestate was injured, and that he died from the effects of his injuries, and that all this happened and took place "without any fault or negligence on his

part." This was sufficient. It is a well settled rule of pleading in this State, in cases of negligence, that a general averment of freedom from negligence is sufficient, unless the court can say from the facts pleaded, as a matter of law, that the plaintiff contributed to his injury. *Evansville, etc., R. R. Co.* v. *Athon*, 6 Ind. App. 295, 51 Am. St. 303.

The averment that plaintiff was without fault has a technical signification, and entitles the plaintiff to make proof of any facts tending to show its truth. *Chicago, etc., R. R. Co.* v. *Nash*, 1 Ind. App. 298; *Town of Salem* v. *Goller*, 76 Ind. 291; *Pittsburgh, etc., R. W. Co.* v. *Wright*, 80 Ind. 182; *Pittsburgh, etc., R. W. Co.* v. *Burton, Admx.*, 139 Ind. 357; *Citizens, St. R. R. Co.* v. *Spahr*, 7 Ind. App. 23.

The cases cited by appellant's counsel do not sustain their contention. The case of *Stewart, Admx.*, v. *Pennsylvania Co.*, 130 Ind. 242, cited by counsel, is expressly against the proposition. It was there held that a general averment that plaintiff "was without fault or negligence in all said matter, had acted with prudence and with care in all said transactions," was sufficient as an averment of freedom from contributory negligence, unless the facts specifically pleaded show that he was guilty of such negligence, and because the specific averment did show negligence, the complaint was held bad.

The demurrer to the first paragraph was properly overruled. The second paragraph of the complaint, or that portion charging the negligence of appellant, and freedom from negligence of appellee's intestate, is as follows:

"That on said 31st day of March, 1894, and long prior thereto, the pipe line used and employed by said defendant corporation in said pipe lines on Canal street, and in front of said building, was weak and in-

sufficient and inferior in quality, and incapable of retaining, carrying and conveying natural gas without hazarding the safety of the public, and endangering the lives and property of the people in and about the locality of said pipe lines. That the defendant at said time had full notice and knowledge of the said facts, and negligently and carelessly used and employed said pipe line to carry and convey said natural gas to its consumers and patrons, and there carelessly and negligently, with full knowledge of the insufficiency and weakness of said pipe lines, and the danger to the public in consequence thereof, turned into and permitted to flow in and through said pipe lines said natural gas from said wells, at a very high and dangerous pressure, far beyond the retaining power and strength of said pipe line. That by reason of said negligence and carelessness of the defendant corporation in using and employing such weak and inferior pipe, and its negligence and carelessness in permitting and allowing said natural gas to flow in and through said pipe lines, at said high and dangerous pressure, the said pipe line at a point in front of said building, on or before the 31st day of March, 1894, broke, burst and gave away and permitted the gas to escape from said pipe line in large quantities into the earth surrounding the same, and that said gas so escaping from said pipe line, permeated the earth, and percolated and found its way through the same, and gathered and accumulated in large quantities beneath said building, and in said building occupied by the American Express Company and the decedent, where the same came in contact with fire and exploded with great force. And that by the force of said explosion, said building was shattered, blown down and totally destroyed, and the debris thereof set on fire by the gas thus ignited. And at the time of the said explosion,

plaintiff's decedent, Jesse D. Harrold, occupied a room in said building adjoining the room occupied by said American Express Company; and that he was a barber by trade and used said room occupied by him as a barber shop, and was, at the time of the said explosion, rightfully in said room pursuing the work and duties of said trade; and that by the force of said explosion, and the falling of said building, he was knocked down, injured, buried and held fast by the ruins and debris of said building, and burned by the fire which immediately followed said explosion; by reason of said injuries, so received, he then and there died, all without any fault or negligence on his part. And that said explosion, the falling of said building, the fire which followed, and the injuries and death of said decedent, were all caused, brought about and produced directly and immediately by said negligence and carelessness of the said defendant corporation so using and employing said weak and insufficient pipe, and in permitting and allowing said gas so to flow in and through the same at the high and dangerous pressure as aforesaid."

This paragraph, it will be seen, differs from the first, mainly, in counting upon the alleged negligence of the appellant in knowingly using weak and inferior gas pipes and allowing the gas to flow into them at a high and dangerous pressure; while in the first paragraph the gist of the negligence is in knowingly using and continuing to use rotten and defective pipes,—pipes that were out of repair and that had become so, presumably, by use. This paragraph is not open to the objection that it fails to bring home to the appellant knowledge or notice of the danger of an explosion. If appellant knew that the pipes were defective and "of an inferior quality, and incapable of retaining and carrying natural gas without hazarding the safety of

the public and endangering the lives and property of the people in and about the locality of said pipe line," as alleged, it was bound to know, also, that there would be danger of an explosion, and it plainly violated a duty devolving upon it, by the use of such pipes, not to speak of the further averment that appellant "with full knowledge of the insufficiency of such pipe line, and the danger to the public and community in consequence thereof, turned into and permitted to flow in and through said pipe line said natural gas from its said wells at a very high and dangerous pressure, far beyond the retaining power and strength of said pipes." There is no merit in the contention that there is no charge of negligence "in the breaking and bursting of the pipe line, in the escaping of the gas, in the percolating of it through the earth, and of its finding its way beneath said building and in said building." The appellant was bound to know that these consequences would probably follow, if they did follow, the use of the defective pipes and the turning on of the gas at the excessive pressure. They were but the natural and ordinary results of its carelessness, and it would be a most extraordinary rule that would require the plaintiff to charge in his complaint, in such a case, that the gas company had special knowledge or notice of the happening of each consequence flowing from its original negligence, in the order in which it occurred. No principle is better settled than the one that every person who is *sui juris* is presumed to know and in duty bound to anticipate the natural and usual consequences flowing from his unlawful acts or omissions. The only serious trouble that sometimes arises in the application of this principle is in determining whether or not a given result may be said to be such a natural and ordinary one as to be properly chargea-

Vol. 16—35

ble to the defendant's negligent act or omission, and this is what has given rise to the doctrine of proximate cause.. The negligence of the defendant must be the proximate cause of the injury, and it is the proximate cause thereof, if it can be properly said to have produced the result complained of, in natural and continuous sequence, unbroken by any efficient intervening cause. The negligence charged may be the proximate cause, although not the immediate one; it is enough if it be the efficient cause which set in motion the chain of circumstances leading up to the injury. *Reid* v. *Evansville, etc., R. R. Co.*, 10 Ind. App. 385, 53 Am. St. 391; *Louisville, etc., Co.* v. *Nolan*, 135 Ind. 60; *Pennsylvania Co.* v. *Congdon*, 134 Ind. 226, 39 Am. St. 251.

We regard this paragraph as sufficient to charge the appellant with negligence.

We also think it contains a sufficient averment of appellee's freedom from contributory fault. What we have said respecting the first paragraph is applicable here also.

The fourth paragraph of complaint is complained of as being subject to the demurrer addressed to it. The grounds of objection urged to this paragraph are much the same as those presented in reference to the first and second paragraphs; and without here setting forth the pleading, we must content ourselves with stating, as a result of our examination, that the court did not err in overruling the demurrer to it.

It is next insisted that the special verdict was insufficient to authorize the trial court to render judgment upon it, and that, therefore, the court erred in overruling appellant's motion for a judgment in its favor and in sustaining appellee's motion for a judgment in his favor.

The objections urged by counsel to the special ver-

dict are in substance that when stripped of all findings of mere conclusions of law and of facts outside of the issues, not enough remains in the verdict upon which a judgment can be properly based.

It may be conceded that a special verdict must contain a finding of every ultimate fact necessary to a recovery, before a judgment rendered upon it will stand; and that mere conclusions, evidentiary facts and facts beyond the issues must be disregarded, and that nothing will be taken by intendment. *City of Bloomington* v. *Rogers*, 9 Ind. App. 230; *Walkup* v. *May*, 9 Ind. App. 409; *Pittsburgh, etc., R. W. Co.* v. *Adams*, 105 Ind. 151.

We have carefully read the verdict and have considered the numerous objections pointed out by the appellant's counsel. Our conclusion is that although it contains some legal conclusions and some mere evidentiary facts, there are enough ultimate facts found to warrant the court in pronouncing judgment upon it. It is proper to say, however, that some of the findings which counsel treat as mere legal conclusions are not such, in our view. The verdict discloses with sufficient certainty that the appellant operated a natural gas plant in the city of Alexandria; that the pipes used for conveying gas from the gas wells to consumers' houses were, on the 31st day of March, 1894, and for a long time prior thereto, rotten, decayed, rusted, and unworthy, and unsafe to carry and control natural gas at high pressure, as the appellant then and there well knew; that said pipe was of a weak and inferior quality, and unfit and unsafe to retain or control natural gas at a high pressure, as appellant then and for a long time prior thereto well knew; that by reason of the conditions named, the said pipes leaked at different points along the line for a long period of time prior to March 31, 1894; that at no time prior to said date

did the appellant subject the pipes, etc., to an examination, or make the same stand a test, to exceed one hundred pounds to the square inch; that appellant, with a knowledge of such condition, allowed natural gas to pass through said lines at a pressure beyond the power and capacity of said pipes, during a period of more than one year prior to said date; that on or before the date mentioned the pipes burst, broke and gave way, and allowed natural gas contained therein to escape from the pipes into the earth surrounding such pipes, and to permeate the same and percolate through the ground and beneath the foundation and building in which the intestate was engaged in the business of a barber; that on said day the escaping gas at said point came in contact with fire in said building and there was an explosion therefrom, which wrecked the building and killed said intestate, etc.

Doubtless the gist of the negligence here found is in allowing the pipes to become rotten and unsafe, without inspection, and without replacing them with others. There is no merit in appellant's point that it was not required to test the pipe to a pressure exceeding one hundred pounds to the square inch. The statute expressly provides that gas companies shall be in duty bound to conduct natural gas only through sound wrought, or cast iron pipes and casings, tested to a pressure of at least four hundred pounds to the square inch; and that such companies shall not convey natural gas through such pipes and casings at a pressure exceeding three hundred pounds per square inch. Section 7507, Burns' R. S. 1894, *et seq*; *Indiana Natural Gas and Oil Co.* v. *Jones, supra.*

Hence, if the appellant, prior to said explosion, failed to test its pipes to a pressure of at least three hundred pounds, it violated the statute referred to and was

guilty of negligence, for which it is answerable in damages for all resulting injury.

Nor do we think there is a material variance between the verdict and the pleadings in that "the Whitesides Block" (the building in which the explosion occurred), is located in the special verdict on the east side of Court street, while the complaint describes said block as being on the west side of said street. The variance, if such it may be called, is clearly immaterial and unimportant. If the complaint was wrong in this description, it could have been amended on motion and will be regarded as having been so amended, on appeal. If the verdict contains the erroneous location, however, it is evident that it was a mere clerical error, and one which could not have been of the slightest injury to the appellant.

The case of *Chicago, etc., R. W. Co.* v. *Burger*, 124 Ind. 275, lends no support to appellant's contention upon this point. In that case the complaint proceeded upon the theory of negligence in the railway company allowing rubbish and other combustible material to accumulate on its right of way, while the special verdict showed a case of negligence arising from the use of an engine not provided with a proper spark arrester. The case cited only reiterates what had long been the rule of law, viz.: that every complaint must proceed upon a definite theory, and that a verdict based upon another theory cannot be sustained. The variance there, was in the gist of the negligence itself. The complaint charged negligence in one thing, while the special verdict found negligence in another. Not so in the present case. Here the negligence charged and found is one and the same matter. The building blown up and in which the accident happened was the Whitesides Block, and whether it was located on the east or west side of the street was wholly immaterial, and the ap-

pellant could not have been misled by the statement contained in the complaint as to the location of such building, even if the statement was not true.

Nor was it necessary that the verdict should find that the deceased had no knowledge of the dangerous, defective or unsafe condition of the pipe line, and that the same had burst and gas was escaping therefrom, although the verdict does find these facts, as we think, clearly enough. Upon the whole, the verdict fairly discloses that the deceased was free from fault. He was lawfully occupying a room in this building and was in the ordinary pursuit of his business, viz., that of a barber, when the explosion occurred, which resulted in his death. Whatever light or fire there was burning in the barber shop or in the other parts of the building was there legitimately as we must presume, and was a matter to be anticipated in the transportation of gas. There is no indication from anything found in the verdict that the deceased was, in any particular, to blame for his death, while the fact that he was free from fault is fairly inferable therefrom.

We think it appears with sufficient certainty in the special verdict that the explosion and death occurred on the 31st day of March, 1894; but if appellant's version is correct that the finding is uncertain in this respect, it is not material. There was no issue as to the operation of any statute of limitation, and time, therefore, was of little or no consequence. The verdict shows that there was an explosion from the effects of leakages of defective gas pipes, which resulted in the death of appellee's intestate, and that appellant was chargeable with knowledge of the defects in such pipes.

There was no error in the court's rulings upon the special verdict.

The appellant has assigned as error the overruling of its motion for a new trial.  It is insisted in this connection that the evidence fails to support the verdict in several important particulars.  We have examined the evidence and find the appellant's position untenable.  There is evidence on every material point which fully sustains the verdict.  True, it is largely circumstantial, but its probative force is not thereby impaired.  It was a matter for the determination of the jury.

The evidence tends to show that the material in the gas pipes was of a very inferior quality.  The high pressure line leaked in several places in 1893, and an examination in that year showed the pipes to be rotten and gas escaping in considerable quantities and the earth blackened from escaping gas along the line.  Appellant was notified in that year by the mayor of the city that the line was unsafe and was requested to replace it with another.  In October, 1893, the appellant's superintendent made an examination, and when the earth was removed it was found that gas was escaping, and the pipe was corroded and leaking.  He endeavored to stop the leaks but was unable to do so.  The appellant, with a full knowledge of these facts, and having been warned of the danger, continued the use of the line and permitted the gas, at high pressure, to pass through it.  The main pipe was thirty inches below the surface of the macadamized streets, and in one place about forty feet from the building where the explosion occurred, in which there was an express office and the barber shop of the deceased.  No explosive material of any kind was used or stored in or about the building, except the natural gas.  After the explosion there was an examination made and it was found that gas had found its way to the foundation, from the main in the street, in

considerable quantities. The service pipe leading from the main to the building was tested and found to be sound, so that gas could not have escaped from it. Upon continuing the investigation to the sidewalk and beneath it, the earth was found blackened from what appeared to be escaping gas, and when fire was applied it readily ignited and continued to burn for some time. A few weeks afterward the vegetation all around this place began to die. There was a strong odor of gas and a discoloration of the earth for some distance about this point. A considerable leak was detected almost directly opposite the building referred to. There were no other gas pipes in the vicinity. Experts testified that the leak had probably been there for a year. Appellant, after the explosion, attempted to trace the leak, and its servants dug four or five feet from the building in the direction of the main, finding the earth black and charged with gas as far as they went, evidently coming from the direction of the pipe line, when appellant ceased further investigation. The explosion was such as to justify the belief that it came from natural gas. The appellant was informed of the dangerous condition of the pipe line six months before the explosion, but no effort was made to repair or place it in safe condition. Witnesses who were competent experts testified, that when gas escapes into the earth beneath the crusted surface of a street, it will go in the direction in which it finds the least resistance, forcing its way through the earth until it escapes, and that it tends to expand until exhausted and then it accumulates, or tends to do so, beneath buildings and in cellars and low places, and that there is no limit to the distance it may travel through the ground in the way of least resistance. There was no odor of gas in the barber shop and the

lights were burning as usual, a few hours before the explosion.

From these and other facts proved or testified to by witnesses, the jury had the undoubted right to conclude that the explosion was the result of the defective gas pipes, and we cannot disturb the verdict on the evidence. As to the question of contributory negligence on the part of the deceased, it is clearly shown that he was in the pursuit of his usual occupation and did nothing which directly or indirectly contributed to the disastrous result which followed appellant's carelessness in the operation of its pipe lines.

It is next insisted that the court erred in permitting the widow of the deceased, by whose administrator this action is prosecuted, to testify as a witness for the appellee. There was no error in this. *Louisville, etc., R. W. Co.* v. *Thompson, Admr.,* 107 Ind. 442, 57 Am. Rep. 120.

Error is predicated upon the ruling of the court in admitting the testimony of John E. Sherman, the mayor of Alexandria, as to a leak in appellant's mains at a point other than that from which the gas claimed to have caused the explosion must have come, and (as appellant insists) at a time subsequent to the explosion in which appellee's decedent was killed. The evidence was conflicting as to whether the discovery of the leak was before or after the explosion. The defective pipe was a part of the same line through which gas was conducted to the building in which the explosion occurred and this evidence tended to show its general condition. There was no error in the ruling.

Other testimony was admitted, over appellant's objection and exception, tending to show the condition of this pipe line prior to the accident. Some of these defects were not noticed until after the explosion, it

is true, but the evidence was such as to warrant a legitmate inference that they existed long before. The testimony was competent only upon the theory that the condition of the pipe at the time of the examination, or when the defect was observed, was such as to indicate that the defects had existed prior to the time of the injury complained of. *City of Indianapolis* v. *Scott*, 72 Ind. 196; *Pennsylvania Co.* v. *Marion*, 104 Ind. 239.

For a similar reason, it was not improper to show that there was an explosion in this line in September, 1894. Besides, the appellant itself introduced evidence on this subject, of another explosion, at a different time. It is, therefore, estopped to question its competency. *Gaff* v. *Greer*, 88 Ind. 122, 45 Am. Rep. 449.

It was proper for appellee to prove by the witness, Sherman, that before the explosion, he informed one of appellant's men, who had control of the line, of the unsafe condition of the pipes and that he thought the high pressure line should be taken up. It tended to prove notice to the appellant of the unsafe condition of the line.

Other minor questions are presented, but they all go to the points already determined, regarding the admissibility of evidence of defects discovered after the injury. It is sufficient to say that we do not think any substantial error was committed by the court in any of its rulings upon the testimony.

We have carefully examined into all the questions raised in the record and have discovered no prejudicial error.

Judgment affirmed.