In re the Marriage of Marjorie A. THOMAS, Appellant (Petitioner below),

v.

Harry THOMAS, Appellee (Respondent below).

No. 03A01–8902–CV–00034.

Court of Appeals of Indiana, First District.

Jan. 22, 1990.
Rehearing Denied March 14, 1990.

C. Richard Marshall, Marshall, Thomasson & Garber, Columbus, for appellant.

William H. Stone, Columbus, for appellee.

ROBERTSON, Judge.

Wife Marjorie A. Thomas appeals an order of the Bartholomew Superior Court which, among other things, terminated former husband Harry Thomas's obligation to maintain life insurance on himself with Marjorie Thomas the beneficiary, an obligation required of him by the separation agreement incorporated into the parties' dissolution decree. Wife challenges the trial court's decision to permit parol evidence of the parties' intent concerning the continuation of the life insurance on her behalf. In addition, she contends the trial court erred in its determination that the life insurance obligation was one in the nature of support rather than a division of property which ended ten years and one month after the date of dissolution.[1]

We affirm.

Marjorie Thomas's allegation of error in the admission of parol evidence cannot constitute reversible error and will not be addressed further on the merits in this opinion. Although appellant Thomas properly voiced her objection at trial, when the court overruled her objection, she proceeded to inquire of Harry Thomas his understanding of the agreement and the basis of that understanding. Later, she offered her own testimony on the intent of the parties expressed in the various provisions of the agreement. A party cannot predicate error on the admission of parol evidence elicited by herself. *Washington National Corporation v. Sears, Roebuck & Co.* (1985), Ind.App., 474 N.E.2d 116, 121, *trans. denied; Forth v. Forth* (1980), Ind. App., 409 N.E.2d 1107, 1112. Thus, we entertain only the contention that the trial court erred in its determination that the obligation to retain life insurance naming Marjorie Thomas the beneficiary terminated ten years and one month after the date of dissolution.

IND.CODE 31–1–11.5–10(a) gives the parties to a dissolution who desire a continuing financial relationship free rein to make such financial arrangements as they wish, including agreements for the sustenance of a spouse in forms other than by periodic payment. *See, Hull v. Hull* (1982), Ind.App., 436 N.E.2d 841. Typically, provisions terminating financial responsibility upon remarriage or the death of either party, calling for modification upon future events, or requiring expenditures from future income are indicative of an intent to provide maintenance or support rather than an effort to divide the property of the marriage. *Buntin v. Buntin* (1986), Ind.App., 496 N.E.2d 1351, *trans. denied; Pfenninger v. Pfenninger* (1984), Ind.App., 463 N.E.2d 1115, 1119.

The provision for life insurance contained in the agreement between the Thom-

---

1. Although Marjorie Thomas's statement of the issues in her brief indicates that she also is attacking the trial court's determination that the monthly alimony payments required by the agreement constituted support, she concedes in her brief that this determination is not itself at issue, other than as it relates to the life insur-

ance question, because, regardless of the outcome, the monthly alimony obligation ceased pursuant to the terms of the agreement. Likewise, appellant Thomas does not directly attack the court's findings on the health insurance payment issue or request any particular relief with respect to that portion of the order.

ases evinces each of these indicia.[2] It called for the husband to maintain all life insurance policies in existence on or about April 21, 1977 until such time as he remarries. In the event of his remarriage, the agreement provided that the husband maintain a $50,000 life insurance policy naming the wife sole beneficiary. Upon the wife's death or remarriage, all payments and other "financial considerations" were to terminate. From an examination of the agreement, therefore, the trial court could logically and properly find that the parties intended the policy to be a means of assuring support for the wife, and not separate property, as it was both contingent upon future events and speculative in the sense that the wife would only recover the sums represented by the policy in the event the husband predeceased her.

The paragraph treating the subject of life insurance makes no mention of the duration of the obligation, and the omission is not supplied expressly in any other provision. The trial court reasoned from its conclusion that the obligation was intended as a form of maintenance and the wife's testimony that the insurance was to provide her additional security that the life insurance could only be security for the substantial amounts called for by the ten year and one month alimony payments, also found by the court to be in the nature of maintenance or support. The trial court found the obligation to provide life insurance had been called for as protection and insurance to the wife in the event the husband died before the ten year and one month payments of alimony had been completed.

These conclusions are sensible and a reasonable interpretation of the agreement as a whole. The agreement imposes no obligation upon Harry Thomas or his estate to complete the monthly alimony payments after his death and no obligation to pay Marjorie Thomas's estate after her death. If the obligation to maintain life insurance had been designed to be a source of maintenance after the initial ten years and until her death, surely receipt of the proceeds would have been conditioned upon something other than Harry Thomas's death, a factor unrelated to Marjorie Thomas's need for support, or would have been irrevocably transferred to her.

Furthermore, the evidence showed that in April, 1977, when the agreement was made, the present value of the monthly payments over a ten-year term amounted to either $78,844.54 or $82,245.13, depending upon whether a nine or ten percent discount rate prevailed at the time. If the contingencies of Marjorie Thomas's death or remarriage were factored into the equation, the present value would be further reduced. Hence, an insurance payoff in the amount of $50,000 would be a reasonable means of assuring that Marjorie Thomas, regardless of the circumstances, ultimately received most of her bargain.

For these reasons, we conclude the trial court did not err as a matter of law in its interpretation and clarification of the settlement agreement incorporated in the parties' dissolution decree.

Judgment affirmed.

BAKER and MILLER, JJ., concur.

---

2. The provisions relevant to the matter read:
   ... the Husband shall pay Wife alimony in the amount of Two Hundred Forty Dollars ($240.00) weekly for ten years and one month beginning the day the Dissolution of Marriage is granted. . . .
   ... the Husband shall maintain any and all life insurance policies which were in existence on or about April 21, 1977, until such time as he remarries. If and when the Husband remarries, he shall maintain a Fifty Thousand Dollar ($50,000.00) life insurance policy with Wife to be the sole beneficiary;
   ...
   ... all payments and other financial considerations shall terminate on the Wife's death or remarriage. . . .