Marjorie A. THOMAS, Appellant
(Respondent below),

v.

Harry THOMAS, Appellee
(Petitioner below).

No. 03S01–9108–CV–653.

Supreme Court of Indiana.

Aug. 26, 1991.

C. Richard Marshall, Marshall, Thomasson & Garber, Columbus, for appellant.

William H. Stone, Columbus, for appellee.

## ON CIVIL PETITION TO TRANSFER

DICKSON, Justice.

In this marriage dissolution case, the trial court's revision of the decree was affirmed by the Court of Appeals which held in part that Marjorie Thomas could not seek review of her claim of error in the admission of parol evidence because she later offered parol testimony to rebut that which was admitted over her objection. *Thomas v. Thomas* (1990), Ind.App., 548 N.E.2d 1194. We grant transfer to address this issue.

The marriage of the parties was dissolved in 1977 pursuant to a decree which approved and incorporated a written separation agreement. Among its provisions was the following paragraph:

It is further agreed by and between the parties hereto that the Husband shall maintain any and all life insurance policies which were in existence on or about April 21, 1977, until such time as he remarries. If and when the Husband remarries, he shall maintain a Fifty Thousand Dollar ($50,000.00) life insurance policy with Wife to be the sole beneficiary; that said policy shall be kept in full force and effect; that the Husband shall pay all dues, premiums and assessments thereon; and that he shall not borrow against, pledge or encumber the same.

In 1987, Mr. Thomas initiated the present proceeding with the filing of his Petition for Termination of Support Obligation and for Declaration of Obligations. His petition sought, *inter alia*, an order "declaring his obligations under the Decree and an Order terminating his obligation to maintain the life insurance policy," alleging that the insurance was security for his obligation to make weekly periodic payments of a lump sum obligation. Following an evidentiary hearing, the trial court found that the life insurance was in the nature of security for the periodic payment obligation which had since been satisfied and that the husband was no longer under the obligation to provide life insurance.

### Waiver of Objection

Before the hearing, Mrs. Thomas filed a motion *in limine* to exclude any extrinsic evidence which might be offered to vary or contradict the terms of the separation agreement, pursuant to the parol evidence rule. The trial court conducted the evidentiary hearing without ruling on the motion. At the hearing on the merits, she timely reasserted, and the trial court overruled, her parol evidence objection. Mr. Thomas was then permitted to testify regarding his intent and understanding as to the terms of the separation agreement at the time it was entered. Counsel for Mrs. Thomas cross-examined him as to such testimony, and during the presentation of her case opposing the petition she testified on direct examination regarding her understanding of the agreement.

The Court of Appeals declined to address Mrs. Thomas's claim that the trial court erred in admitting parol evidence regarding the separation agreement, for the following reason:

Although appellant Thomas properly voiced her objection at trial, when the court overruled her objection, she proceeded to inquire of Harry Thomas his understanding of the agreement and the basis of that understanding. Later, she offered her own testimony on the intent

of the parties expressed in the various provisions of the agreement. A party cannot predicate error on the admission of parol evidence elicited by herself.

548 N.E.2d at 1195. Upon this issue the decision conflicts with *Leuck v. Goetz* (1972), 151 Ind.App. 528, 280 N.E.2d 847.

The appellants in *Leuck* claimed trial court error in admitting, over their objection, evidence of stop signs placed at the intersection after the accident. The appellee argued that any claim to such error was waived by the appellants' redirect examination of the witness. Judge Sullivan provided the following analysis:

> Quite obviously a complaining party may not successfully assert error in the admittance of certain evidence if he himself offers and succeeds in getting the same or similar evidence before the jury. *Gaff v. Greer* (1882), 88 Ind. 122; *Wheeler v. Moore* (1899), 22 Ind.App. 186, 53 N.E. 426; *Alexandria Mining and Exploring Co. v. Irish* (1896), 16 Ind.App. 534, 44 N.E. 680; *Indiana Rules of Procedure*, T.R. 61. The case before us, however, involves an obvious and permissible attempt on the part of plaintiffs to minimize the damage done by the defendant's evidence on this point. *Fahler v. Freeman* (1968), 143 Ind.App. 493, 241 N.E.2d 394; *Montgomery v. Gerteisen* (1964), 135 Ind.App. 633, at 646, 195 N.E.2d 868; *Kaplan v. Tilles Inc.* (1961), 131 Ind.App. 390, 171 N.E.2d 268. A party is certainly entitled to attempt to lessen the effect in the jury's mind of such erroneous evidence without waiving his right to claim error in the admission of the irrelevant and prejudicial testimony, if such testimony was timely and properly objected to. *Washington Twp. Farmers' Co–Operative Fuel and Gas Light Co. v. McCormick* (1898), 19 Ind. App. 663, 49 N.E. 1085.

In his discussion of the issue, Professor McCormick advises:

> If it happens that a party who has objected to evidence of a certain fact himself produces evidence from his own witness of the same fact, of course he has waived his objection. However, when his objection was made and overruled he was required and entitled to treat this ruling as the "law of the trial" and to explain or rebut, if he can, the evidence which has come in over his protest. Consequently, it will not be a waiver if he cross-examines the adversary's witness about the matter, even though the cross-examination entails a repetition of the fact, or if he meets the testimony with other evidence which under the theory of the objection would be incompetent.

C. McCormick, *Handbook of the Law of Evidence* 129–30 (1954). A similar approach is presented in 12 R. Miller, *Indiana Practice* § 103.114 at 40–41 (1984):

> When the objecting party has presented substantially the same evidence as that to which he objects, any error in the admission of his opponent's evidence will be harmless. A party does not, however, "waive" his earlier proper objection to his opponent's evidence by responding to it with rebuttal evidence.

To categorically or arbitrarily apply a rule finding waiver of a party's objection to evidence when the record may disclose that the objecting party subsequently offered similar evidence is contrary to the meaningful and efficient administration of justice. Such a rule compels the properly objecting party to choose between two unfair alternatives: 1) respond to the opponent's erroneously admitted evidence but thereby forfeit the right to appellate review; or 2) risk a trial court determination on the merits based upon the opponent's improper but uncontradicted evidence. Acceptance of such a rule would also foster the introduction of improper evidence because of the reduced risk of adverse consequences. The indiscriminate application of the rule to find waiver may be seen as a device to avoid reversal of trial court judgments, but mere expediency is not an appropriate appellate goal. The objectives of trial procedure are to secure determinations that are not only speedy and inexpensive but also just. Ind.Trial Rule 1.

■ We believe that it is more reasonable to allow a party aggrieved by the erroneous admission of evidence, whose timely and proper objection has been overruled, to respond to such improper evidence without sacrificing the right to appellate recourse. In this way the objecting party may nevertheless seek to salvage an acceptable result at trial, thus eliminating the need for appeal. On the other hand, if the objecting party offers evidence on the same subject matter which goes beyond merely meeting and responding to evidence which was admitted over his proper objection, such action may render harmless the trial court's error in overruling the earlier objection. We infer from Judge Miller's analysis, and agree, that the analysis is more accurately one of "harmless error" than "waiver." In the present case, Mrs. Thomas's objection at trial was timely, and the issue was preserved and properly presented on appeal. We will not find the objection waived by the subsequent cross-examination or presentation of evidence to rebut, explain, or otherwise respond.

### Admissibility of Parol Evidence

Mrs. Thomas claims on appeal, as she did at trial, that the separation agreement in the present case is clear, unambiguous, and not subject to more than one interpretation. Thus, she argues, the parol evidence rule required the exclusion of evidence of antecedent impressions, understandings, and conversations offered to refute, vary, contradict or interpret the written agreement. Such evidence of intent extrinsic from the written agreement, if admissible, provides the basis for the trial court's conclusion that Mr. Thomas was no longer under any obligation to provide life insurance because it was in the nature of security for the periodic payment obligation.

■ Orders as to property disposition may not be revoked or modified, except in case of fraud. Ind.Code § 31–1–11.5–17(b). However, in the present case the obligation to provide life insurance is not part of the property disposition. The parties agree that this obligation was subject to a separate paragraph of the property settlement agreement which provided that "all payments and other financial considerations shall terminate on the Wife's death or remarriage." For a provision in a settlement agreement to constitute permanent property division immune from modification, the obligation imposed thereby must be unconditional, not subject to change upon eventualities such as death or remarriage. *DeVoe v. DeVoe* (1988), Ind.App., 531 N.E.2d 1200; *Pfenninger v. Pfenninger* (1984), Ind.App., 463 N.E.2d 1115; *Hull v. Hull* (1982), Ind.App., 436 N.E.2d 841; *Whaley v. Whaley* (1982), Ind.App., 436 N.E.2d 816. Because the life insurance provision is conditional upon death or remarriage, it is subject to modification as maintenance.

■ This appeal, however, is from the trial court order granting a petition which did not seek a modification of maintenance due to unforeseen substantial and continuing changed circumstances pursuant to Ind.Code § 31–1–11.5–17(a).[1] The petition was instead seeking clarification. A trial court may entertain a petition the nature of which is to seek clarification of a prior order. *Id., Brownsing v. Brownsing* (1987), Ind.App., 512 N.E.2d 878.

■ When a contract is unambiguous, the intent of the parties should be determined by the language employed in the document. *Behme v. Behme* (1988), Ind.App., 519 N.E.2d 578; *In re Marriage of Buntin* (1986), Ind.App., 496 N.E.2d 1351; *In re Marriage of Bradley* (1982), Ind.App., 433 N.E.2d 54. Application of this rule is vividly illustrated in *Bradley*, which involved a provision in the approved property settlement agreement ordering the sale of the marital home upon the husband's remarriage. Alleging that the husband was cohabiting with another woman, the wife sought to enforce the provision, asserting that for all intents and purposes Mr. Bradley was remarried. Observing that the term "remarriage" was bargained

---

1. Although not within the issues presented by Mr. Thomas's petition, the trial court expressly found that no substantial and continuing change of circumstances warranted the modification of the life insurance provision.

for and decided upon as an express condition in the agreement, the Court of Appeals refused her claim, finding the terms of the agreement clearly stated and not met.

> The intent of the parties to a contract should be determined by the language employed in the document. It is only where the terms are ambiguous that an exception to this rule applies.

433 N.E.2d at 55. We must determine whether the language employed in the Thomas' property settlement agreement directly supports the determination that the obligation of Mr. Thomas to provide life insurance was to terminate upon completion of his periodic payment obligation, or whether the agreement is ambiguous such that the trial court properly admitted and considered the extrinsic evidence of intent.

The agreement contains no language terminating the life insurance obligation except as to the wife's death or remarriage. There is nothing stating that the parties intended the life insurance only as security for the periodic payment obligation. The insurance provision is even separated from the periodic payments provision by three unrelated paragraphs distributing the personal property in each party's possession and requiring the husband to pay debts. Clearly, the agreement does not designate the required life insurance as security or as terminable upon final payment of the periodic payments. Likewise, we cannot find in the terms of the agreement any ambiguity so as to permit resort to extrinsic evidence of intent. Like the language in *Bradley*, that employed by Mr. and Mrs. Thomas was bargained for and decided upon as an express condition of their agreement. Because the terms of the agreement are not ambiguous, we conclude that the trial court erred in overruling the parol evidence objection of Mrs. Thomas and permitting extrinsic evidence of the intent.

Transfer is granted. The judgment of the trial court, to the extent that it declares the life insurance provision to be in the nature of security and therefore no longer an obligation of Harry Thomas, is reversed.

In all other respects,[2] the judgment of the trial court remains intact.

SHEPARD, C.J., and DeBRULER, J., concur.

GIVAN, J., dissents with opinion in which KRAHULIK, J., joins.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case. I agree with the majority opinion that the Court of Appeals makes an erroneous statement concerning the waiver issue.

If one would assume the trial court in fact did err in permitting the husband to testify as to the understanding of the parties in drafting the written agreement, the wife then should have had the opportunity without waiver to cross-examine the husband regarding his ideas and to present her own evidence concerning her understanding.

I believe the majority has cited correctly the proper authorities to support this position. However, without much question, the written agreement entered into by the parties is virtually impossible of interpretation based solely upon the language contained therein. Marjorie Thomas claims the language is clear and she proceeds to give her interpretation of that "clear" meaning. Harry Thomas comes to the opposite conclusion and states that the meaning, strictly within the written words of the contract, is unclear.

In writing the opinion for the Court of Appeals, Judge Robertson, after reciting the terms of the contract and conclusions of the trial judge, stated:

> "These conclusions are sensible and a reasonable interpretation of the agreement as a whole. The agreement imposes no obligation upon Harry Thomas or his estate to complete the monthly alimony payments after his death and no obligation to pay Marjorie Thomas's estate after her death." *Thomas v. Thomas* (1990), Ind.App., 548 N.E.2d 1194, 1196.

**2.** We share the observation of the Court of Appeals that this appeal involves only the life in- surance question. *Thomas,* 548 N.E.2d at 1195 n. 1.

On the other hand, the majority opinion of this Court has little trouble in finding that the language of the contract leaves no doubt as to the opposite conclusion. It thus appears we have judicial pronouncements which clearly indicate the written contract is in fact not so clear. Under these circumstances, it was proper for the trial court to admit the parol testimony of both parties to explain the ambiguous language of the contract. *See* 13 I.L.E. *Evidence* § 231 (1959) and the numerous Indiana cases cited therein.

I therefore would hold that the trial court did not err in admitting the parol testimony of Harry Thomas nor was there any waiver when Marjorie Thomas submitted her parol evidence as to the understanding of the contract. Under the circumstances, I feel there was no error by the trial court as far as the submission of evidence was concerned.

I believe the trial court should be affirmed.

KRAHULIK, J., concurs.