## INDIANA STATE COUNCIL OF CARPENTERS PENSION FUND, Plaintiff,

v.

## Verlie M. VECLOTCH and Dixie Lee Veclotch Thurin, Defendants.

### No. S91–158M.

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 2, 1992.

Joseph V. Simeri, South Bend, Ind., for plaintiff.

Richard B. Urda, Jr., South Bend, Ind., for Verlie M. Veclotch.

William M. Farabaugh, Brian J. Lake, South Bend, Ind., for Dixie Lee Veclotch.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Arthur G. Veclotch ("Art") belonged to the Indiana State Council of Carpenters. He married Dixie Lee Veclotch in 1960, and divorced her in 1986. A few weeks before the divorce, Art and Dixie executed a waiver of the joint and 50% survivor benefit that otherwise would be payable by the Council Pension Fund. As part of the decree dissolving the marriage, the court adopted the property settlement agreement that Art and Dixie had executed. A provision of that agreement, which the parties agree to be a qualified domestic relations order ("QDRO") for purposes of this motion, provided, "The Husband agrees that he will continue to keep the Wife's name as beneficiary on his employee's Pension Trust with Carpenter's Local Union # 413 until he reaches the age of sixty-five (65) years." A month before executing the property settlement agreement, Art and Dixie executed a waiver of the joint and survivor benefit that would have been payable by the pension fund.

Art married Verlie Veclotch on May 12, 1989. About six months later, Art changed the beneficiary designation on his group life insurance benefits with the Indiana

State Council of Carpenters Health and Welfare Fund to name Verlie as his beneficiary, but he made no attempt to change the beneficiary designation on the pension fund, which named Dixie as beneficiary. Art died on December 4, 1990. At his death, Art was still married to Verlie, was still actively employed, and was not receiving retirement benefits. Verlie had not executed a waiver of her right to receive benefits from the Pension Fund as Art's surviving spouse.

The Pension Fund brought this declaratory judgment action to determine which of Art's wives is entitled to benefits. Verlie and Dixie each counterclaimed against the Fund and cross-claimed against each other. Verlie has moved for summary judgment. Fed.R.Civ.P. 56. She must show that no genuine issues of material fact exist and that she is entitled to judgment as a matter of law.

Verlie first argues that upon her marriage to Art, Dixie's rights as beneficiary were subordinated to her rights as spouse. She begins her analysis with 26 U.S.C. § 401(a)(11)(ii), which requires a qualified trust to provide that a qualified pre-retirement survivor annuity ("QPSA") be provided to the surviving spouse of a vested participant who dies with a surviving spouse before the annuity starting date. 26 U.S.C. § 417(a)(2) provides that the surviving spouse must join in any waiver of the QPSA; Verlie did not join in any such waiver.

Verlie next turns to the Plan's provisions. Article VI, § 3 provides, "If a Participant who has a Spouse dies before his pension payments start, but at a time when he earned a vested right to a pension, a Pre-retirement Surviving Spouse Benefit shall be paid to his surviving Spouse." Verlie argues that her right to the benefit precludes Dixie's claim, because Article VI, § 1(A) provides,

If a Participant who is married and is vested dies and has not rejected the joint and survivor (Spouse) benefit, the Trustees will provide the Spouse of the Participant a monthly benefit as set forth in Article VI, Section 3. Upon the payment

of this benefit, no other benefit shall be payable to the Spouse or any other beneficiary.

Verlie contends that the QDRO does not change this outcome. She concedes that a QDRO can protect the former spouse to the subsequent spouse's exclusion:

To the extent provided in any qualified domestic relations order—

(A) the former spouse of a participant shall be treated as a surviving spouse for purposes of sections 401(a)(11) and 417 (and any spouse of the participant shall not be treated as a spouse of the participant for such purposes)....

26 U.S.C. § 414(p)(5)(A). To do so, however, Verlie contends that the QDRO must provide that the former spouse is to be treated as the participant's spouse for all purposes even in the event of the participant's remarriage, and must specify that the subsequent spouse will not be treated as the participant's surviving spouse in the event of the participant's death. Dixie's QDRO does neither. Accordingly, Verlie argues, the QDRO left Dixie as a nonspouse beneficiary, but that status avails her of nothing under the Plan provisions when faced with a surviving spouse.

Dixie submits her own affidavit and the affidavit of her attorney from the divorce case. Those affidavits agree that the parties' intent in drafting the property settlement agreement was that Dixie would receive any death benefits from the pension fund should Art die before age 65. Dixie's affidavits indicate that the pension fund was a topic of considerable discussion in reaching the property settlement agreement. The bargain was reached by allowing Art to receive all pension benefits if he lived to age 65. Dixie argues that surrounding circumstances, such as Art's failure to change his pension fund beneficiary upon his remarriage, further demonstrate the intent, shared by Art and Dixie, that Dixie receive the pension fund benefits if Art should die before age 65, regardless of remarriage.

Dixie also notes that Article VI, § 4 of the pension fund Plan provides that a prior spouse's rights under a QDRO shall take

precedence over the claim of a spouse at the time of the participant's death. She notes further that the Plan contains no requirements as to the QDRO's language, and her QDRO complies with the requirements set forth at page 13 of Plan Summary. Her QDRO, she contends, is consistent with the parties' intent and with the requirements of 26 U.S.C. § 414(p)(5).

Verlie contends that the affidavits of Dixie and her attorney must be stricken. Citing *Thomas v. Thomas*, 577 N.E.2d 216 (Ind.1991), Verlie maintains that Indiana's parol evidence rule bars consideration of the affidavits.

### The Motion to Strike

■ Verlie is correct that the *Thomas* court held that the parol evidence rule applies to property settlement agreements, and the parol evidence rule operates, when applicable, to confine the court's considerations to the four corners of the document being construed. The rule is not applied woodenly, however; it applies only if the document language is unambiguous: "When a contract is unambiguous, the intent of the parties should be determined by the language employed in the document." *Thomas v. Thomas*, 577 N.E.2d at 219. If the documentary language is ambiguous, the court may resort to other evidentiary material to determine the parties' intent. *First Federal Savings Bank of Indiana v. Key Markets, Inc.*, 559 N.E.2d 600, 604 (Ind.1990). A contract is ambiguous if a reasonable person would find its language subject to more than one interpretation. *Christensen v. Sears, Roebuck and Co.*, 565 N.E.2d 1103, 1108 (Ind.App.1991). Ambiguity is an issue of law, *Williams v. National Can Corp.*, 603 F.Supp. 1268, 1275 (N.D.Ind.1985), and is not established simply because the parties to suit disagree. *Tate v. Secura Ins.*, 561 N.E.2d 814, 819 (Ind.App.1990).

■ Verlie contends that a plain reading of the property settlement agreement's language indicates that Dixie is a beneficiary but not a surviving spouse. Because the Plan provides that no other beneficiary may receive benefits if there is a surviving spouse, this reading would preclude Dixie's claim. The court cannot, agree, however, that the documentary language is unambiguous. It is silent on the issue of remarriage. Verlie's reading of the language is reasonable, but so is Dixie's. Accordingly, resort to extrinsic evidence is permissible, and the motion to strike must be denied.

### Merits of the Summary Judgment Motion

■ Under the standards applicable to summary judgment, the court must presume that Art and Dixie intended the construction for which Dixie argues. If Verlie is correct about the requirements of § 414(p)(5), however, that intent is immaterial because the QDRO would be insufficient to make Dixie a surviving spouse. In other words, if the QDRO must, as a matter of law, specify that the former spouse is to be treated as the participant's spouse for all purposes even in the event of the participant's remarriage, and must specify further that a subsequent spouse will not be treated as the surviving spouse in the event of the participant's death, Verlie wins.

As authority for her proposition as to what the QDRO must specify, Verlie cites Treas.Reg. § 1.401(a)–13(g)(4), 2 W. Lieber, LIEBER ON PENSION ¶ 6:5,010, at 6–60, 62 (1991), and *Dugan v. Clinton*, 8 E.B.C. 2065, 1987 WL 11640 (N.D.Ill.1987). The court does not find any of those authorities persuasive.

The Treasury Regulation sets forth things a QDRO may do, and does not purport to set forth what the QDRO must contain in order to do those things: "a QDRO may provide that a former spouse shall be treated as the current spouse...." The Regulation draws a distinction between a QDRO that entitles a former spouse to all benefits and a QDRO that entitles the former spouse only to benefits that accrued before the divorce, but does not mandate the language necessary to create such rights.

*Dugan* did not address the issue presented in this case; that case turned upon the QDRO's language, which simply awarded

the earlier wife a percentage of the benefit payments "if, as, and when the husband receives same". The *Dugan* court properly held that the husband never would receive death benefits; only the surviving spouse could receive death benefits. Although the QDRO did not make the former wife a surviving spouse, *Dugan* does not support a proposition that a QDRO cannot do so without specifically including the terms "death" and "remarriage". Similarly, the court finds no support in the quoted passage from Mr. Lieber's work for the proposition that the QDRO must include specific words.

The inquiry thus returns to the language of the Act itself. Dixie argues that the parenthetical language of § 414(p)(5)(A) must be contained within the QDRO. The court cannot agree. As with the cited Treasury Regulation, the statutory language specifies that which can be achieved in a QDRO and the effect of such a provision, not the language by which it can be accomplished.

Verlie is not entitled to judgment as a matter of law.

### Conclusion

■ Dixie's interpretation of the property settlement agreement is one that reasonable minds might reach, and one that is not foreclosed by 26 U.S.C. § 414(p)(5)(A). Her response to the summary judgment motion demonstrates the existence of a genuine issue of fact as to the parties' intent in the property settlement agreement.

Accordingly, the court now:

(1) DENIES Verlie Veclotch's motion to strike, and

(2) DENIES Verlie Veclotch's motion for summary judgment.

The court now schedules this cause for a preliminary pretrial conference on Tuesday, January 21, 1992, at 2:00 p.m. in the third floor courtroom to schedule further proceedings.

SO ORDERED.