James SANTONELLI, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 45A03–0008–PC–305.

Court of Appeals of Indiana.

March 19, 2001.

Susan K. Carpenter, Public Defender of Indiana, James T. Acklin, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Adam Dulik, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

James Santonelli appeals the post-conviction court's denial of his petition for post-conviction relief, alleging that the court erred in concluding that he had not demonstrated that his appellate counsel was ineffective.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 24, 1992, Santonelli was convicted of child molesting based on allegations that surfaced a few days after Santonelli ended his relationship with the victim's mother. Prior to trial, counsel conferred with the court regarding the prosecutor's intent both to mention in opening statements and to introduce evidence that Santonelli had a prior conviction for molesting his daughter. Santonelli moved in limine to exclude the evidence of his prior conviction and all references to such evidence. The trial court denied his motion in limine.

In his opening statement and over Santonelli's objection, the prosecutor told the jury about Santonelli's prior conviction. Santonelli's counsel then cross-examined two of the State's witnesses about their knowledge of the prior charge. Santonelli was convicted.

On direct appeal of this conviction, appellate counsel argued that the introduction of the evidence of Santonelli's prior conviction violated the newly-minted prohibition on depraved sexual instinct evidence developed in *Lannan v. State*, 600 N.E.2d 1334 (Ind.1992). However, counsel failed to include the opening statements in the appellate record. Not having the benefit of the opening statements, this court held that Santonelli opened the door to evidence about his prior conviction by first raising the issue of his prior conviction in his cross-examination of the State's witnesses. *See Santonelli v. State*, 625 N.E.2d 509 (Ind.Ct.App.1993).

After this court's decision was handed down, appellate counsel realized that the opening statements were necessary to make a complete record on the issue. Accordingly, he filed a petition to supplement the record along with a petition for rehearing. We denied the petition to supplement and the petition for rehearing, and the supreme court subsequently denied transfer as well.

In November 1998, Santonelli filed his petition for post-conviction relief, arguing that his appellate counsel was ineffective for failing to adequately present the issue of the introduction into evidence of his prior conviction and to submit a transcript of the prosecutor's opening statement. After a hearing, the post-conviction court denied the petition. He now appeals.

## DISCUSSION AND DECISION

█ Santonelli argues that the trial court erred in concluding that he failed to meet his burden of demonstrating that he received ineffective assistance of appellate counsel. Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind.Post Conviction Rule 1(5). In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. *Weatherford v. State*, 619 N.E.2d 915, 916 (Ind.1993). We will affirm a denial of post-conviction relief un-

less the petitioner establishes that the evidence is without conflict and, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision. *Taylor v. State,* 717 N.E.2d 90, 92 (Ind.1999).

■ The standard of review for claims of denial of the right to effective appellate counsel is the same as that used for trial counsel. *Minnick v. State,* 698 N.E.2d 745, 754 (Ind.1998), *cert. denied,* 528 U.S. 1006, 120 S.Ct. 501, 145 L.Ed.2d 387 (1999); *McCurry v. State,* 718 N.E.2d 1201, 1204 (Ind.Ct.App.1999), *trans. denied* (2000). When reviewing a claim of ineffective assistance of counsel, we initially presume that counsel's representation was within the wide range of reasonable professional assistance. *Griffin v. State,* 698 N.E.2d 1261, 1266 (Ind.Ct.App.1998), *trans. denied.* The test to be applied when ineffective assistance of counsel is alleged is two-pronged. First, the defendant must prove that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, the defendant must prove that the substandard performance was so prejudicial that he was deprived of a fair trial. *Id.* In determining whether the defendant was prejudiced, we look to the totality of the evidence and ask whether there is a reasonable probability that the outcome would have been different, but for counsel's errors. *Williams v. State,* 706 N.E.2d 149, 154 (Ind.1999), *cert. denied,* 529 U.S. 1113, 120 S.Ct. 1970, 146 L.Ed.2d 800 (2000). A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Dowdell v. State,* 720 N.E.2d 1146, 1150 (Ind.1999). A court may look first at any resulting prejudice from counsel's claimed errors before determining whether counsel's performance was deficient. *Legue v. State,* 688 N.E.2d 408, 410 (Ind.1997).

■ The State first argues that Santonelli did not receive ineffective assistance of appellate counsel even if appellate counsel failed to properly present the *Lannan* claim because the holding in *Lannan* does not apply. It bases this argument on the fact that Santonelli's case was not pending on appeal when *Lannan* was decided. Here, Santonelli was convicted on September 24, 1992. The praecipe to initiate Santonelli's direct appeal is file stamped October 27, 1992. *Lannan* was decided on October 16, 1992. In its opinion, the supreme court stated that the new rule should apply "effective from this day forward." *Lannan,* 600 N.E.2d at 1339. However, in *Pirnat v. State,* 607 N.E.2d 973 (Ind.1993), the supreme court held that *Lannan* applied to cases which were pending on direct appeal at the time *Lannan* was decided and explained the rationale for this approach:

> "[Defendants with pending appeals] receive the benefit of review under the new rule for the basic reason that they ought not be penalized merely because we chose another pending case as the vehicle for announcing the change of an evidentiary rule."

*Pirnat,* 607 N.E.2d at 974.

In *Posey v. State,* 624 N.E.2d 515 (Ind. Ct.App.1993), we were faced with the issue of whether *Lannan* should apply retroactively to a child molesting conviction entered prior to *Lannan* but where the appeal was initiated after the decision. In that case, the defendant was convicted on October 1, 1992 of child molesting after evidence of prior acts of child molesting was admitted at trial. *Lannan* was handed down fifteen days later. On December 4, 1992, the defendant filed his praecipe to initiate his appeal. On appeal, he alleged that *Lannan* should have applied to his case. *Id.* at 517. Citing *Pirnat,* this court determined that *Lannan* applied only to defendants " 'whose cases were pending on direct appeal at the time Lannan was decided.' " *Id.* Because the appellate rules provided that an appeal is initiated by the filing of a praecipe, the defendant's appeal was not pending at the time *Lannan* was

decided. Accordingly, *Lannan* did not apply. *Id.*

In spite of the fact that the supreme court in *Pirnat* referred to cases with pending appeals rather than cases in which appeals were not yet final, its rationale clearly exhibits an intent to apply *Lannan* retroactively to those cases for which the direct appeal was not final, as opposed to cases in which a defendant attempts a collateral attack on his conviction. The distinction made by the court in *Posey* and the State here between cases in which conviction had been entered but the direct appeal had not been initiated on the precise day on which *Lannan* was decided has no significance and makes the applicable law dependent on the fortuities of chance. According to this reasoning, here, had Santonelli's counsel filed a praecipe in the first twenty-two days after his conviction, *Lannan* would apply, but had he waited any longer (as he did in this case), *Lannan* would not apply, even though it applied to convictions entered earlier than his. Such cannot be the case where the supreme court by its own admission adopts a new rule of law. *See Lannan*, 600 N.E.2d at 1339 (expressly abandoning the depraved sexual instinct rule in favor of Rule 404(b)). Thus, we do not accept the State's argument that Santonelli was not prejudiced by appellate counsel's failure to properly present the *Lannan* issue on appeal because *Lannan* does not apply to this case. Rather, we must determine whether Santonelli's claim would have been successful if it had been properly presented on appeal.

Here, although the prosecutor first mentioned the prior conviction, Santonelli was the first to introduce evidence and delve into the subject. During the pretrial hearing, the State explained that it would bring up the prior conviction in opening statements. In the prosecutor's opening, he said, "[Santonelli] did not return [to the victim's mother's house.] [The victim's mother] spoke to the defendant later and found out why, because he had been con-

victed of and sentenced for molesting his own daughter." *Record* at 47.

The first witness was the child victim. On cross-examination, defense counsel asked the child if she knew why Santonelli left. She stated "He went to jail." *Trial record* at 103. Defense counsel then asked the child numerous questions about her contact with Santonelli while he was in jail and how she felt about that. He then asked her if she knew why he had gone to jail:

"**Q.** I think I've asked you this already, [K.M.], but do you remember your mom telling you why James was in jail?

**A.** Yes.

**Q.** She did? What did she say that James was in jail, why was he in jail? What did your mom tell you?

**A.** I forgot.

**Q.** Was it because he had done some bad things to his daughter?

**A.** Yes.

. . .

**Q.** Do you remember your mom telling you all about that, [K.M.]?

**A.** Yes.

**Q.** And she told you that James was in jail because he had done some bad things to his daughter by touching her, right?

**A.** Yes.

**Q.** On her private?

**A.** Yes."

*Trial record* at 118–19.

The next witness was the victim's mother. The State elicited testimony from her that Santonelli was arrested for molesting his daughter by fondling. Later, the actual conviction was admitted. Thus, although Santonelli properly objected to the erroneous evidence, he was also the first party to use such evidence. The State argues that Santonelli has therefore waived his claim.

In *Thomas v. Thomas*, 577 N.E.2d 216 (Ind.1991), the supreme court explained

when a party may object to evidence and then use such evidence for its own case without waiving appellate review of the issue. There, the parties executed a written separation agreement that was incorporated into their dissolution decree. Several years later, Husband petitioned to terminate his support obligation and sought to introduce testimony regarding the purpose of the agreement. Prior to the hearing, Wife filed a motion in limine pursuant to the parol evidence rule to exclude evidence that would contradict the written terms of the separation agreement. The trial court failed to rule on the motion. At the hearing, she timely raised an objection to the evidence, which the trial court overruled. Husband was then allowed to testify as to his intent and his understanding of the agreement. Wife's counsel cross-examined Husband, then Wife testified as to her understanding. *Id.* at 217.

On appeal, Husband claimed that Wife had waived her objection to his testimony by cross-examining him about it. The supreme court disagreed, arguing that such a rule compels a party to choose between responding to erroneously admitted evidence, thereby forfeiting the right to appellate review, or risk a determination on the merits based on improper but uncontradicted evidence. The court held:

> "We believe that it is more reasonable to allow a party aggrieved by the erroneous admission of evidence, whose timely and proper objection has been overruled, to respond to such improper evidence without sacrificing the right to appellate recourse. In this way the objecting party may nevertheless seek to salvage an acceptable result at trial, thus eliminating the need for appeal. *On the other hand, if the objecting party offers evidence on the same subject matter which goes beyond merely meeting and responding to evidence which was admitted over his proper objection, such action may render harmless the trial court's error in overruling the earlier objection."*

*Id.* at 219 (emphasis added).

Here, Santonelli's counsel went beyond merely answering the erroneously admitted fact that he had a prior conviction for child molesting. The trial transcript shows that Santonelli's counsel made offensive use of the prior conviction by asking a series of questions that suggested that the victim had fabricated her allegation, perhaps at the prompting of her mother, with whom Santonelli had just ended a relationship, after learning that Santonelli had been convicted of a similar crime. Accordingly, Santonelli's use of the evidence exceeded merely rebutting the erroneously admitted evidence and any error arising from the admission of such evidence is harmless. *Compare id.* (error is harmless) *with City of Lake Station v. Rogers,* 500 N.E.2d 235, 239 (Ind.Ct.App. 1986) (error in admission of evidence at trial is waived on appeal where complaining party submits evidence to substantially the same effect). *See also* ROBERT L. MILLER, 12 INDIANA PRACTICE § 103.104 (1995) (discussing later use of evidence previously objected to and concluding that harmless error, rather than waiver, is the appropriate analysis).

Because any error was harmless, Santonelli suffered no prejudice as a result of his appellate counsel's failure to include the opening statements in the appellate record. Thus, Santonelli did not receive ineffective assistance of appellate counsel. Accordingly, the post-conviction court did not err in denying Santonelli's petition for post-conviction relief.

The dissent describes trial counsel's tactical decision whether to make an offensive use of evidence which it deems objectionable as a "Hobson's choice." *Opinion,* p. 1287. Thomas Hobson, the seventeenth century liveryman for whom such choices are named, however, gave his customers no choice at all; they were required to take the horse closest to the door. The rule set forth by our supreme court in

*Thomas* presents counsel with a difficult, but nevertheless real, choice. Counsel can object to evidence which she deems inadmissible and still respond to it, rebut it or otherwise attempt to explain it without waiving the client's right to an appeal. Or, counsel can make a tactical decision to use the evidence deemed objectionable offensively in a way which goes beyond rebutting the objectionable evidence, thereby rendering the admission of such evidence harmless. Counsel cannot do both.

Here, the testimony elicited by Santonelli's counsel did not rebut the prior child molesting conviction. It did not seek to show that the circumstances underlying the prior conviction were different than those then before the court. It did not attempt to show that the conviction was too remote to be relevant to the present case. It did not explain or minimize the prior conviction in any way. Rather, counsel made the tactical decision to use the evidence of the prior conviction in an attempt to show that the child molesting allegations made by the victim here were false because they were made after she heard of Santonelli's prior conviction and that it was upon learning of such conviction that the seed for the present allegations was sown. Indeed, the dissent itself notes that trial counsel used the evidence to support "an alternative theory."

Even with the advantage of hindsight, we do not fault the tactical choice made by trial counsel. At the time of the trial in this case, *Lannan* had not yet been decided; evidence of depraved sexual instinct was still admissible. Consistent with controlling precedent, the trial court informed the parties that it would allow the evidence of Santonelli's prior conviction. Pursuant to that ruling, the prosecutor told the jury during opening statement that it would hear evidence of the prior conviction. Trial counsel could not have anticipated what our supreme court would hold in *Lannan*, when it would rule, or whether the ruling would have retroactive application.

Effective trial advocacy is a continuing series of difficult choices: Does a criminal defense lawyer call her client as a witness waiving the Fifth Amendment privilege against self-incrimination and opening the door to impeachment through the introduction of evidence of prior crimes? Does counsel seek an admonition to a jury and risk putting objectionable material again before the jury or remain silent, thus waiving the error? Does counsel seek a mistrial when a jury is exposed to improper material, preserving the right to appeal, but at the same time incurring the expense and delay of a retrial and risk losing a favorable verdict which may only be hours away or does counsel keep silent, waiving the error? Does counsel put on opinion testimony regarding character, thus opening the door to cross-examination regarding specific instances of conduct? Does counsel meet and respond to evidence admitted over his timely and proper objection, seeking to minimize its effect, while preserving appellate error or does counsel himself make use of such evidence in support of an alternative theory? In making each of these choices, counsel must balance the short term value of the choice to the trial then at hand against the long term benefit of preserving appellate error. Whether such choices are Hobson's or real, we believe that the making of such choices is the essence of trial advocacy.

Affirmed.

NAJAM, J., concurs.

VAIDIK, J., concurs in part and dissents in part with separate opinion.

VAIDIK, Judge, concurring in part and dissenting in part.

I concur in the majority's opinion in so far as it holds that *Lannan* applies to the instant case because Schmidt was not attacking his conviction collaterally, but rather, was challenging it on a direct appeal that was not yet final. However, I respectfully dissent from the majority's decision that Santonelli's claim would not

have been successful if it had been properly presented on appeal.

Relying on *Thomas* to conclude that any error was harmless, and thus, Santonelli would not have succeeded on appeal, the majority posits that Santonelli's counsel went beyond "merely meeting and responding to" the erroneously admitted fact that he had a prior conviction for child molesting. *Thomas*, 577 N.E.2d at 219. Whether trial counsel's actions rendered any error harmless turns on what constitutes going "beyond merely meeting and responding." The majority concludes that Santonelli's counsel made offensive use of the prior conviction, and thus, he went "beyond merely meeting and responding to" the erroneously admitted facts. I disagree.

The case before us involves an obvious and permissible attempt on the part of trial counsel to minimize the damage done by the State's opening remarks regarding Santonelli's previous conviction for child molesting. Accordingly, I conclude that the majority mischaracterizes trial counsel's cross-examination of the alleged victim as an offensive use of the erroneously admitted facts, which went beyond "merely meeting and responding to" the facts.

It is a basic tenet of trial advocacy that an attorney must anticipate the potential weaknesses of his case and defuse any potentially damaging facts by bringing them out on his own. STEVEN LUBET, MODERN TRIAL ADVOCACY, ANALYSIS AND PRACTICE 11 (2d ed. 1997). While this does not mean that the attorney may first refer to the inadmissible facts without rendering any error harmless, after opposing counsel refers to such facts, he may meet and respond to the inadmissible evidence without jeopardizing his client's appeal.

But for the State having first mentioned the previous conviction for child molesting during its opening statements, trial counsel would not have brought the conviction to the jury's attention. Trial counsel, in an effort to dissuade the jury from using the erroneously admitted conviction as evidence of "he did it once, maybe he did it again," rebutted this inference by offering evidence to destroy it. Record at 51. *See also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1893 (1993) (defining rebuttal as "the giving of evidence in a legal suit to destroy the effect of evidence introduced by the other side in the same suit"). This is an example of good trial advocacy that should not be punished by rendering any error the trial court may have made harmless.

Trial counsel questioned the victim about the prior conviction in order to put such evidence in a different light for the jury. As such, I find that trial counsel's cross-examination of the victim merely rebutted the State's reference to the previous conviction in its opening statement, and therefore his use of the erroneously admitted facts was purely defensive. To classify trial counsel's actions otherwise would have a chilling effect.

The majority places trial counsel in a precarious position by restricting their ability to respond to improper evidence without risking the chance that their actions may be considered offensive, thereby rendering any error the trial court may have made in admitting those facts harmless. *See Thomas*, 577 N.E.2d at 219 (positing "[w]e believe that it is more reasonable to allow a party aggrieved by the erroneous admission of evidence ... to respond to such improper evidence without sacrificing the right to appellate recourse. In this way the objecting party may nevertheless seek to salvage an acceptable result at trial, thus eliminating the need for appeal."). I decline to impose such a Hobson's choice on trial counsel.