GARY P. LEUCK ET UX. *v.* ROBERT GOETZ.

[No. 471A79. Filed April 3, 1972. Rehearing denied April 28, 1972. Transfer denied September 15, 1972.]

*Charles R. Vaughn, Vaughn and Vaughn,* of Lafayette, *Karl M. Jacobs,* of Fowler, for appellants.

*Joseph T. Bumbleburg, Ball, Eggleston & Bumbleburg,* of Lafayette, for appellee.

SULLIVAN, J.—The cause appealed is a consolidation of two actions filed in the Benton Circuit Court on February 27, 1968 by plaintiff-appellants, Gary P. Leuck and his wife, Jeanette Leuck, against defendant-appellee, Robert Goetz, for personal injuries sustained by appellants in an automobile accident allegedly caused by the negligence of appellee. On July 3, 1968 both cases were venued to the Tippecanoe Circuit Court. The motion to consolidate was filed September 11, 1968, and granted on February 10, 1969.

The conclusion of the trial to a jury on June 18, 1970 resulted in judgments entered upon verdicts for defendant in both cases.

The trial record discloses that on September 24, 1967, the vehicle operated by appellant-Gary Leuck and occupied by his wife was proceeding east on Reifel Road, a country road located in Benton County, Indiana. At the same time, appellee was travelling south in a pick-up truck on Benner Road. The accident occurred at the intersection of these two roads. There were no automatic or stationary traffic controls, signals or signs present at the time. The northwest corner of the intersection was occupied by a standing field of corn so as to possibly hinder the view of either or both drivers as they approached the intersection.

At the trial a professional photographer was called by plaintiff-appellants. He testified that on the day of the accident he took photographs of the intersection in question and that upon the same or the following day he took pictures of the vehicles involved. Over objection, he was permitted to testify on cross-examination that since the date of the accident, certain changes had been made at the intersection, including the placement of a stationary stop sign for traffic east-bound, the direction appellants had been travelling.

The Sheriff of Benton County testified that he arrived at the scene of the accident at approximately 9:20 A.M. He stated that he observed skid marks from appellants' automobile and measured them to be approximately forty-five feet in length, but found no skid marks behind appellee's truck. The Sheriff further stated that both appellant-Gary Leuck and appellee informed him of their respective speeds just prior to the accident. The former claimed he was travelling at approximately 50 m.p.h. and the latter claimed his speed to be approximately 40 m.p.h.

Appellants later called Gerald Wallpe who testified that he was travelling north on Benner Road and was passed by appellee going in the opposite direction at a point approximately one-half mile north of the junction at which the accident took place. Mr. Wallpe estimated appellee's speed to be between 70-75 m.p.h.

When appellant-Gary Leuck testified, he stated that when he approached the intersection, his speed was 40 m.p.h. He explained that he was driving slowly and cautiously because his wife was pregnant, and that his wife made no remarks about the manner in which he was driving the automobile. He stated that he recalled cornfields to the left as he approached the intersection, but that he recalled nothing of the collision itself.

Upon direct examination, appellee denied the allegation of Gerald Wallpe that he, appellee, was going 70-75 m.p.h. and stated his speed to be approximately 50 m.p.h. and that he slowed to approximately 40 m.p.h. to enter the intersection. Appellee testified that as he approached the intersection, he "slowed down and * * * looked both ways."

Subsequently, Kenneth W. Heathington, a licensed professional engineer was called by appellee to testify as an expert accident reconstructionist. In Dr. Heathington's opinion, at the precise moment and point of impact, appellee was travelling at approximately 35 m.p.h. and appellants were travelling at approximately 54 m.p.h.

The following issues are presented for our review:

1.  Whether the trial record is so defective as to preclude consideration by this Court of any questions which depend upon evidentiary matter for their resolution?
2.  Whether the trial court erred in admitting and refusing to strike evidence that stop signs which faced appellants' direction of travel were placed at the accident intersection subsequent to the accident?
3.  Whether the trial court erred in giving appellee's Instruction No. 11 concerning joint enterprise?
4.  Whether there was sufficient evidence of probative value to support a finding of contributory negligence with respect to appellant-Jeanette Leuck, and whether the trial court erred by giving appellee's Instruction No. 9, concerning the duty of care as to a passenger-guest in an automobile?

## BY FILING PETITION FOR EXTENSION OF TIME APPELLEE WAIVED ANY TECHNICAL DEFECT APPEARING IN TRIAL RECORD

Appellee contends that the evidence adduced below is not properly before this court because:

1. The trial record omits certain evidence, to-wit: numerous physical exhibits, and that therefore certain instructions which were given are not supported by evidence.
2. The trial record bears an incomplete and inaccurate clerk's certificate.
3. The trial record was not properly filed with the clerk and no order book entry was made evidencing such filing, thus it is not part of the record of proceedings.

On October 21, 1971, appellee filed a verified petition for extension of time within which to file his answer brief. This court granted that petition by order of October 26, 1971, and extended appellee's filing date to December 14, 1971. It is only in that brief, filed pursuant to the extension, that appellee has raised the "sufficiency of the trial record" issue.

We find that appellee has waived his right to object to the alleged defects of record. Appellate Rule 14(B) reads in part as follows:

"* * * The petition shall state facts showing that the court in which the appeal is taken or to be taken has jurisdiction and that the briefs will be on the merits. When the petition for an extension of time is filed by the appellee, the petition shall show that all motions to dismiss and all dilatory motions on behalf of the petitioner have been filed."

Pursuant to AP. 14(B), by filing his petition for an extension of time, appellee was required to limit the scope of his brief to *the merits* of the instant cause. If he wished to have the appeal dismissed for the technical objections stated heretofore, the essence of which has nothing to do with the merits of the case, he should have made the appropriate motion prior to filing his petition for

extension of time. By appellee's failure in this regard, he has waived his objection. This finding has been firmly established by prior holdings of this court. *Bland* v. *Phillips* (1966), 138 Ind. App. 214, 213 N. E. 2d 339; *Central Indiana R.R. Co.* v. *Mikesell* (1965), 139 Ind. App. 478, 211 N. E. 2d 794; *Langford* v. *DeArmond* (1965), 137 Ind. App. 448, 209 N. E. 2d 737. Although the aforementioned decisions were governed by former Indiana Supreme Court Rule 2-16, the language in that Rule is identical to AP. 14(B), rendering the earlier pronouncements clearly applicable to the instant case.

We further note that appellee does not contend that the evidence as transcribed and as physically contained in the record filed in this court is in any manner inaccurate.

### TRIAL COURT ERRED IN ADMITTING AND REFUSING TO STRIKE EVIDENCE THAT STOP SIGNS WERE PLACED AT INTERSECTION SUBSEQUENT TO ACCIDENT

Appellants argue that the trial court erred in admitting evidence, over their objection, that stop signs were placed at the intersection facing appellants' direction of travel subsequent to the accident. Appellants claim that such testimony is inadmissible in that it is only the condition of the intersection at the time of the accident, and not subsequently, which is relevant.

At trial, the professional photographer who took photographs of the accident scene, was asked upon cross-examination by appellee whether the intersection was the same at the time of trial as it was at the time of the accident. The pertinent testimony is as follows:

"Q. Now, from your observation, have you been—passed that way any time recently in the last—since the accident happened?
A. Yes, I have.

Q. Would you say that so far as the lines of the direction and the course of each road and other fixed objects in farm improvements and the like, that the intersection is substantially the same now as it was September 24, 1967?

BY MR. VAUGHAN: Wait a minute. Before you answer I want to make an objection for the reason it makes no difference what the intersection is now. We're trying a lawsuit that took place September 24, 1967. I don't care what the exception is now, if they closed all the roads, it makes no difference.

BY THE COURT: The objection will be overruled. You may answer the question.

A. Yes, I do. I also—one of my spare time hobbies is—use to drive a bus route through there and the last time I went by there, oh I imagine four or five months ago, and at that time the only changes I noticed in the intersection—

BY MR. VAUGHAN: Now wait a minute, I object to any changes in the road, Your Honor. If it's been changed or a change in the intersection, there has been no showing that it is relevant in this lawsuit, and I object to it for that reason.

BY THE COURT: We ruled on that once.

*  *  *

Q. When you were through there on the occasion that you mentioned, what, if any difference did you notice, with respect to any fixed object or objects or the course—or of the road, either road or the location of fence lines, of telephone poles, other fixed objects, if there was any difference?

BY MR. VAUGHAN: Now to which question I object for the reason that this is cross-examination, it is not direct examination. We went into no change in the course after the date of this accident. It's beyond the scope of the direct examination. It's irrelevant—

*  *  *

A. The change of the road, the north and south road hadn't had anything done to it except the county has maintained the right-of-way. I mean, it hasn't been

improved, so east and west road going toward the intersection that would be from here—this direction east had been re—what you call top coated. They re-sealed it. A new stop sign had been placed here and a new one here, on the east and west road.

Q.  Now this stop sign to which you refer was one to the west of the intersection and on the Reifel Road?

\* \* \*

A.  It is the Reifel Road, yes.

\* \* \*

Q.  Located on the Reifel Road, and I believe for east-bound traffic, on the east-west road?

A.  There was a stop sign—if this is the—this is the road, north and south, east and west, there's one coming, if you come into the intersection, and there's a stop sign here,—now let's see, yeah here and one right here.

Q.  Now they're both on the east-west road, are they not?

A.  Yes.

Q.  And the other west of the intersection for east-bound intersection, is that right?

A.  Yes.

Q.  And the other west of the intersection for east-bound traffic?

A.  Yes.

Q.  Is that right? And so now—

BY MR. VAUGHN: Now wait a minute, if he's answered the question, at this time, Your Honor, I ask that all the evidence, testimony of this witness with regard to a stop sign placed after the date of this accident be stricken from the record for it's not material and he has not shown it's relevance. They were not in control, force or effect on the date of this accident, and I ask—and they didn't lead to anything relevant in this lawsuit, and they were not part of the direct examination of the witness, and I ask that they be stricken from the record. That this testimony be stricken from the record.

Q.  If Your Honor, please, I—if I may reply to that, I think it's material whether there had been any changes and if there had not been, and if there are

any exceptions to show that, because I think that can save a good deal of time perhaps with the introduction to the future exhibits here on both sides.

BY THE COURT: Well, before I rule on the motion, Mr. Furr, I understood you to testify that you observed some months ago when you last went through that intersection, that there were some new stop signs. Did you mean to infer, or imply, that there had been stop signs there at that time of the accident in question:

A. At the time of the accident, Judge, there wasn't no stop signs, either direction.

BY THE COURT: Very well, the motion to strike will be overruled however."

Appellee contends that regardless of what this court's determination might be concerning the admissibility of the photographer's testimony about stop signs, appellants have waived this issue by their failure to object prior to the witness's answer.

Appellants' counsel did not, as appellee claims, fail to object prior to the witness's answer. In response to the second question quoted above from the cross-examination, appellant objected before the answer. Such objection was clear and sufficiently timely to preserve the error in admitting such testimony.

Turning to the content of appellants' objection, it was not, as the trial court surmised, an endeavor by appellants to explain or have explained to the jury that while there were stop signs at the intersection subsequent to the accident, none were present when the accident occurred. Appellants do not assert that the jury may have been led to believe that such signs required them to stop on the day in question; instead, the subsequent placement of such signs might create in the minds of reasonable persons the impression that an impartial third party (in this instance the county highway department) has determined that the road upon which appellee-defendant was travelling is a preferential highway. This

impression might well lead to a juror or jury to conclude that appellant-Gary Leuck, even absent such signs, should also have recognized the preferential nature of the road upon which appellee's vehicle was travelling. In effect, the trial court's attempted clarification of the testimony did not cure the error. Rather, it led the witness to restate what we consider to be the prejudicial testimony.

Appellee contends that even if such evidence was erroneously admitted, appellants have waived such error by their re-direct examination of the witness, during which inquiry was made as to the agency responsible for the placement of the signs. That testimony insofar as applicable is as follows:

"Q. And you said Mr. Handy here is Commissioner of Benton County?

A. Yes, sir.

Q. Do you know whether or not he has anything to do with putting up road signs—signs—stop signs on the roads?

A. The Commissioner has control—he has some part over the highway department as well as the other policy of the government.

Q. Mr. Handy does?

A. I believe so.

Q. Do you know who was responsible for putting up the stop sign you talked about here at this intersection?

A. No, I don't, sir."

The testimony elicited upon re-direct examination is not in the nature of evidence similar in its import to that which is alleged to be improper. Quite obviously a complaining party may not successfully assert error in the admittance of certain evidence if he himself offers and succeeds in getting the same or similar evidence before the jury. *Gaff* v. *Greer* (1882), 88 Ind. 122; *Wheeler* v. *Moore* (1899), 22 Ind. App. 186, 53 N. E. 426; *Alexandria Mining and Exploring Co.* v. *Irish* (1896), 16 Ind. App. 534,

44 N. E. 680; *Indiana Rules of Procedure*, T.R. 61. The case before us, however, involves an obvious and permissible attempt on the part of plaintiffs to minimize the damage done by the defendant's evidence on this point. *Fahler* v. *Freeman* (1968), 143 Ind. App. 493, 241 N. E. 2d 394; *Montgomery* v. *Gerteisen* (1964), 135 Ind. App. 633 at 646, 195 N. E. 2d 868; *Kaplan* v. *Tilles, Inc.* (1961), 131 Ind. App. 390, 171 N. E. 2d 268. A party is certainly entitled to attempt to lessen the effect in the jury's mind of such erroneous evidence without waiving his right to claim error in the admission of the irrelevant and prejudicial testimony, if such testimony was timely and properly objected to. *Washington Twp. Farmers' Co-Operative Fuel and Gas Light Co.* v. *McCormick* (1898), 19 Ind. App. 663, 49 N. E. 1085. Whatever precaution the county highway department saw fit to take after the accident is wholly irrelevant to any issue in this case. See *Atlanta Metallic Casket Co.* v. *Hollingsworth* (1963), 107 Ga. App. 594, 131 S. E. 2d 61; *Belle Isle Cab Co.* v. *Trammell* (1962), 227 Md. 438, 177 A. 2d 404; 11 *Blashfield, Automobile Law and Practice*, §§ 424.2 at p. 375 and 424.5 at pp. 429-30.[1]

By reason of such error, the cause must be reversed as to both appellants.

Appellant, Jeanette Leuck, additionally attacks the giving of two of appellee's instructions. While the result obtained above renders consideration of further alleged error technically unnecessary, we proceed to a discussion of those issues because the instructions in question might well be tendered upon retrial.

---

1. Our research in Indiana case law unveils one decision which speaks to this issue, but, in relation to the case before us, it is of marginal value at best as support for our holding. *See Montgomery* v. *Gerteisen, supra,* which holds that because an exhibit was admitted into evidence showing conditions existing after the accident which were different than those which existed at the time of the accident, testimony was required to explain the alterations and changes.

## NO BASIS EXISTS FOR JOINT ENTERPRISE INSTRUCTION WHERE APPLICABILITY IS GROUNDED SOLELY ON FACT THAT HUSBAND AND WIFE TRAVELLED TO COMMON DESTINATION IN SAME VEHICLE FOR SAME PURPOSE

Appellee's Instruction No. 11, given by the Court concerns the concept of joint enterprise. It reads as follows:

"If you find from a preponderance of the evidence that the plaintiff Jeanette Leuck, at the time of the accident complained of, was riding in an automobile being driven by her husband, and that she and her husband Gary were then and there engaged in a joint enterprise pursuant to an agreement, express or implied, and that they each had a right to control and manage the operation of the automobile and the course and conduct of the trip, and they had a community of interest in the object and purpose of the undertaking in which said automobile was then being used and an equal right to direct and govern the movements and conduct of each in respect thereto; and if you further find that Gary P. Leuck was negligent in the operation of said automobile at said time and place, then such negligence would be chargeable to the plaintiff, Jeanette Leuck."

To this instruction appellants objected:

"* * * for the reason that said Instruction instructs the jury as to the definition of a joint-enterprise and applies that law relating to joint-enterprise to the plaintiffs in this case. Plaintiffs object for the reason that there is no issue in the case relating to a joint-enterprise between the two plaintiffs, nor is there any evidence introduced at the trial which such issue could be introduced into the case. There was no evidence that Jeanette Leuck had any control over the course in the conduct of the trip, nor did she have any right to manage the operation of the automobile on such trip."

Upon examination of the trial record, we find no evidence which permits any reasonable inference that a joint enter-

prise existed between appellants. At best, it can be said that appellants were engaged in a family-social venture to attend church at Reynolds, Indiana and thereafter a get-together of relatives at Flora, Indiana. Presumably the trial court founded the applicability of Instruction No. 11 solely upon the fact that two persons, husband and wife, had embarked upon a journey with a common destination and a common purpose.

In *Prosser, The Law of Torts* (4th Ed. 1971) § 72, the author states at 477-78:

"One group of cases, now definitely very much in the minority and almost passing out of the picture, have found a joint enterprise in the mere association of the driver and the passenger in the use of the vehicle for any purpose in which they have a common interest of any kind. Thus friends on a pleasure trip together, members of the same family on the way to church, a group proceeding together to witness a prize fight, a prospective purchaser riding with a salesman, and fellow servants riding together in the course of their employment, have at various times been found to be engaged in a joint enterprise, by reason of that association alone, with the mutual right of control conjured up from the community of interest without more. Such decisions were condemned as in effect a restoration of discarded fictions of imputed contributory negligence in nearly all passenger cases, since it is seldom that some element of common purpose cannot be found when two persons are travelling together in a private vehicle. So many of the jurisdictions in which these decisions appear have repudiated them, or departed from them in later cases, that they are now almost entirely discredited; *and it is generally agreed that something more is required for a joint enterprise than the mere showing of a contract or agreement to travel together to a destination for a common purpose.* Something in the nature of a common business, financial and pecuniary interest in the objective of the journey is said to be essential. In this form the requirement of a mutual interest persists as a minimum in all courts, to the exclusion of all cases in which the parties are casually together for pleasure or for independent ends."
(Emphasis supplied)

One who is passive such as Mrs. Leuck, and who exercises no right of control over the driver, cannot, under any theory of agency have the driver's negligence imputed to her. *Union Traction Co. v. Haworth* (1918), 187 Ind. 451, 115 N. E. 753; *Chicago, Indianapolis and Louisville Ry. Co. v. Lake County Savings and Trust Co., Admin.* (1917), 186 Ind. 358, 114 N. E. 454; *Beem v. Steel* (1967), 140 Ind. App. 512, 224 N. E. 2d 61; *Vance v. Wells* (1959), 129 Ind. App. 659, 159 N. E. 2d 586. In the case before us, we cannot by implication find that Mr. and Mrs. Leuck had an equal voice in the management of the automobile, albeit that Mrs. Leuck had the right to give her husband directions and, to be sure, could well have had a duty to warn if and only if she knew of an impending danger and the husband-driver was unaware of its presence. In *Holmes v. Combs* (1950), 120 Ind. App. 331, 335, 90 N. E. 2d 822, this court stated:

"A wife's failure to warn her husband of a danger of which she is cognizant, but of which he is unaware, or a husband's failure to heed such a warning, if given, might amount to negligence on the part of the one failing so to do, * * * but we fail to see how it could evidence a 'recognized right of joint control' as claimed by appellant." (citations omitted)

In this state, the effect of decisional law is that no liability is imputed to the spouse by virtue of a joint enterprise theory absent a showing of at least some joint proprietary purpose.[1]

In *Holmes v. Combs, supra,* this court held that a wife was not engaged in a joint enterprise with her husband simply because they were married and travelling together in an auto-

---

1. *See Hake v. Moorhead* (1966) 140 Ind. App. 127, 222 N. E. 2d 617, where husband and wife drove to a bank for the purpose of depositing money derived from a joint business in a joint checking account. The court held that the husband's contributory negligence was imputable to the passenger-wife.

mobile to make a social visit. In *Keck* v. *Pozorski* (1963), 135 Ind. App. 192, 191 N. E. 2d 325, the court stated that the marital relationship does not in itself establish the existence of joint control and management of the vehicle coupled with a community of interest and purpose sufficient to effect a joint enterprise. The court in *Keck* found a joint enterprise to exist because the wife owned the vehicle being driven by her husband and both were travelling to work together in order to enhance family finances. Required by the court in *Keck* was a showing of more than a common destination and a common purpose by husband and wife.

On the basis of the foregoing reasoning, we disapprove of the giving of such an instruction if its applicability, as here, is founded solely upon the fact that two persons, husband and wife, are embarked upon a journey to a common destination for a purely social purpose.

## TRIAL RECORD DOES NOT CONTAIN SUFFICIENT EVIDENCE TO SUPPORT A REASONABLE FINDING THAT JEANETTE LEUCK WAS CONTRIBUTORILY NEGLIGENT

Appellants argue in connection with the last issue presented that the trial court erred in giving an instruction relating to the duty of appellant-Jeanette Leuck. The instruction reads as follows:

> "If you find from all the evidence that the Chevrolet automobile involved in the collision was driven by Gary P. Leuck toward the intersection in question and that the plaintiff Jeanette Leuck was only a passive guest in such automobile, I instruct you that the plaintiff Jeanette Leuck was nevertheless, prior to the collision, required to use such degree of care for her own safety as an ordinarily prudent person would have used under the same or similar circumstances."

Appellant-Jeanette Leuck objected:

> "* * * the Instruction instructs the jury on a duty of care as to a passenger-guest in an automobile, and there is no

evidence in the lawsuit raising an issue as to her exercise, or lack of exercise, of reasonable care. The Instruction is, therefore, confusing and misleading to the jury."

We find that this instruction is inapplicable to the evidence, and could only serve to confuse and mislead the jury. The trial record discloses only the possibility of speed on the part of the husband in the operation of appellant's automobile. It also discloses the presence of a blind corner created by the standing corn, and shows the evidence of any warning or other comment or conduct by appellant-Jeanette Leuck, which warning, comment or conduct would be intended to avert an accident or safeguard her own safety. Such facts standing alone do not give rise to a reasonable inference that Mrs. Leuck negligently failed to take affirmative action for her own safety.

We would not condone eavesdropping upon the jury in deliberation to determine whether it was influenced by an erroneous instruction nor the taking of affidavits from jurors to prove an instruction's effect. See *Jessop* v. *Werner Transp. Co.* (1969), 147 Ind. App. 408, 261 N. E. 2d 598, 601, 22 Ind. Dec. 503, 506. When such an issue is presented on appeal, however, we are faced with the question of how to distinguish between the obviously misleading and confusing instruction which perhaps, possibly, or probably, tainted the verdict as opposed to the erroneous instruction which the jury perhaps, possibly, or probably ignored in their deliberations.

We recognize that reversal of cases for the giving of erroneous instructions tends not only to extend litigation but also increases expense as well as the case load of our state courts. Since this Court lacks the omniscience to determine whether a jury did in fact ignore an instruction, we emphasize that it is the duty of the trial judge to be particularly alert to instructions which are wholly outside the scope of the issues and evidence and to refuse them, thus averting appeals upon such issues.

The judgment below is reversed as to both plaintiff-appellants and the cause remanded for further proceedings not inconsistent herewith.

White, P.J. and Buchanan, J., concur.

NOTE.—Reported in 280 N. E. 2d 847.