Beverly McKINNEY, as the Administratrix of the Estate of Hugh L. McKinney, Appellant–Plaintiff,

and

Corporation of the Presiding Bishop of Church of Jesus Christ of Latter–Day Saints, and Eugene Brobst, Appellants–Defendants,

v.

PUBLIC SERVICE COMPANY OF INDIANA, INC., and Wanda R. Schnell, Appellees–Defendants.

No. 30A01–9108–CV–228.

Court of Appeals of Indiana, First District.

Aug. 26, 1992.

Clarification granted; Rehearing denied, Oct. 5, 1992.

Richard S. Ewing, William N. Ivers, Stewart & Irwin, Indianapolis, for appellants.

Donald L. Dawson, John B. Drummy, Kightlinger & Gray, Indianapolis, J. William DuMond, Plainfield, for appellees.

ROBERTSON, Judge.

Beverly McKinney, as the Administratrix of the Estate of Hugh L. McKinney [McKinney], and the Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints [Church], and Eugene Brobst, appeal the summary judg-

ments awarded in favor of both Wanda R. Schnell and Public Service Company of Indiana, Inc. [PSI] in McKinney's wrongful death action arising out of an automobile accident brought against Brobst, Schnell, and PSI.[1] We address three (3) theories presented in support of the trial court's awards of summary judgment and reverse and remand for trial.

## FACTS

The facts in the light most favorable to the nonmovant, McKinney, indicate that the present lawsuit arose out of an automobile accident which occurred on August 11, 1988 on southbound Interstate 65 near Seymour, Indiana. Interstate 65 is a four-lane divided highway. About 10:30 a.m. Wanda Schnell, southbound on I65, began driving over a long bridge that spanned a river. The right front tire of her car blew out and her car became difficult to steer. She stopped her car in the right lane of traffic on the bridge, obstructing the interstate. The tires on the right side of Schnell's car were approximately on the white line which marked the right boundary of the travel lane. The shoulders of the bridge were narrow, there being approximately forty-two (42) inches between the outside of each lane and the bridge railing. Schnell turned on her emergency flashers. Although her tire was flat, her car was operable and she could have driven the rest of the way across the bridge in order to pull off the traveled part of the interstate into the emergency lane.

About that time, Raymond Johnson, a maintenance mechanic for PSI came along southbound on the interstate driving PSI's bright yellow flat-bed truck. Johnson saw Schnell's car and stopped the truck approximately fifty (50) to seventy-five (75) feet behind Schnell's car. He turned on the truck's emergency flashers. The PSI truck's right front wheel was on the right white boundary line of the travel lane and the rear wheels of the truck straddled the white line. Johnson got out of the truck, walked over to Schnell's car and prepared

to change Schnell's flat tire. He got the spare out of the trunk. McKinney's claim against PSI is predicated upon Johnson's negligence.

Richard and Florence Kreis were also proceeding south on I65 in the right lane approaching the bridge. Richard was driving the couple's van. He noticed the PSI truck obstructing the right lane from about one-half (½) mile away. Kreis slowed his van down and changed into the left lane.

Finally, Eugene Brobst and Larry McKinney were also proceeding south down I65 in the right lane. They were in a refrigerated truck owned by the church. Brobst was driving and McKinney was asleep. Brobst's view of the blocked right lane of the highway became unobstructed when Kreis, driving his van, changed lanes ahead of Brobst. When Brobst and McKinney passed the Kreis' van, there were approximately six (6) car lengths between the church truck and the PSI truck parked on the highway. Nevertheless, Brobst's attention was diverted to the side of the highway and he did not notice that the PSI truck was obstructing the interstate until it was too late. At approximately ten (10) feet from the PSI truck, Brobst swerved to the left and struck the left rear of the PSI truck, pushing it into Schnell's car. Brobst and Schnell suffered injuries and McKinney was killed in the accident.

Brobst and McKinney were members of the church. At the time of the accident, they were performing volunteer work for the church by delivering food to the needy. Brobst and McKinney were unemployed at the time and were themselves receiving assistance from the church in the form of food and the payment of utility and other bills. A church representative had asked them to volunteer to operate the truck for the church to deliver food to the needy. The performance of this volunteer service was not a condition to receiving assistance from the church.

It was initially contemplated that Brobst and McKinney would take turns driving the truck. However, McKinney failed the

---

**1.** Brobst filed a separate lawsuit against Schnell, PSI, and Johnson for the injuries he suffered in the accident. Brobst and the church are defen-

dants in the present lawsuit. For simplicity, we will refer to the appellants in this case as McKinney.

physical examination administered by the Department of Transportation [DOT] and was not permitted to drive the truck. So, while both Brobst and McKinney would load and unload the truck, only Brobst would drive the truck. Brobst and McKinney would take turns driving their personal cars from their homes in Alexandria, Indiana to the church's warehouse on the north side of Indianapolis. The church reimbursed them for the use of their cars at twenty-two ($0.22) cents per mile or approximately twenty-two dollars ($22.00) per day. Brobst stated that McKinney was interested in doing more volunteer work for the church in order to get the mileage reimbursement for the use of his car.

Additional facts are supplied as necessary.

### DECISION

When we review a trial court's ruling on a motion for summary judgment, we are bound by the same standard as the trial court: we must consider all the designated material including pleadings, affidavits, depositions, admissions, answers to interrogatories, and testimony in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by a trier of fact. Ind.Trial Rule 56(C); *Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229, 1234. A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. *Scott v. Bodor, Inc.* (1991), Ind. App., 571 N.E.2d 313. If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party. *Woodward Insurance, Inc. v. White* (1982), Ind., 437 N.E.2d 59, 62. If no genuine issue of material fact exists, summary judgment is appropriate if the moving party is entitled to judgment as a matter of law. *Id.* The moving party bears the burden of showing the absence of a factual issue and his entitlement to judgment as a matter of law. *Norman v. Tur-*key Run Community School Corp.* (1980), 274 Ind. 310, 313, 411 N.E.2d 614, 615.

### I.

Whether any negligence of Johnson and/or Schnell in parking on and obstructing the interstate was such a remote cause of the accident that, as a matter of law, such negligence cannot constitute a proximate cause of McKinney's death?

or, the same theory stated differently: Whether Brobst's negligence was the superseding cause of the accident and as such was the sole proximate cause of the accident and McKinney's death?

Our analysis proceeds from the premise that summary judgment is rarely appropriate in negligence actions. *Harper v. Guarantee Auto Stores* (1989), Ind.App., 533 N.E.2d 1258, *trans. denied.* Tort liability is predicated upon proximate cause. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154; *Walker v. Jones* (1987), Ind.App., 511 N.E.2d 507. It is well-settled that where a defendant's negligence merely creates a condition by which the subsequent injury producing acts of another are made possible, the existence of the first condition cannot be the proximate cause of the injuries, but is a remote cause. *Id.* In determining whether a cause of injury is actionable, the test is to be found not in the number of intervening events, but in the character of the original act and its natural and probable consequences. *Harper,* 533 N.E.2d 1258.

A negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated, regardless of whether the earlier negligence concurs with other proximate causes of injury or whether another act of negligence intervenes. *Id.; Havert,* 452 N.E.2d 154; *Walker,* 511 N.E.2d 507. The requirement of foreseeability is directly related to the rule that an intervening cause may serve to cut off the liability of one whose original act sets in motion the chain of events leading to the injury. *Id.* Such intervening cause is not a concurrent or

contributory cause, but is a superseding cause. *Id.* When an independent agency does intervene between the defendant's negligence and the injury, the legal effect of the intervening agency is not determined by characterizing a defendant's actions as merely creating a condition, but depends instead upon whether, under the circumstances, the agency might reasonably have been expected to intervene in such a way as to produce an injury similar to the one actually caused. *Id.* The determination of what is reasonably foreseeable is not judged by the subjective opinions of those involved, but is based upon the objective standard of due care in avoiding a result which might reasonably have been anticipated in the ordinary experience of people. *Id.* If the actor should have realized his conduct might cause harm to another in substantially the manner in which it is brought about, the harm is universally regarded as the legal consequence of the actor's negligence. *Id.* If the intervening cause is foreseeable, the original tort-feasor cannot escape liability. *Id.* Conversely, if the intervening cause is not foreseeable as a natural consequence of the original act, then the original tort-feasor cannot be held liable for injuries caused by the second tort-feasor. *Id.*

PSI and Schnell argue that *Havert,* 452 N.E.2d 154, operates to exonerate them from liability as a matter of law. *Havert* involved four (4) cars. The first car, a police car, stopped and parked on a street where parking was permitted. The second car stopped immediately behind the police car. The third car then negligently struck the second car in the rear. A police officer and the the driver of the second car were standing between the second and third cars when a fourth car struck the third car in the rear which pushed all the cars together. The policeman, the driver of the second car, and his wife all suffered serious personal injuries as the result of the final collision. Our supreme court exonerated the third driver, who negligently drove into the second car, from liability for the injuries caused by the final collision, holding:

> [the third driver's] act cannot as a matter of law be held to be the proximate cause of the [injuries suffered in the final collision] due to the unforeseeability of the

subsequent act of [the fourth driver]. *The key fact or circumstances in this case leading to this conclusion is the same undisputed fact that* would appear to preclude a finding that the plaintiffs were contributorially negligent: *The cars were all aligned completely within a legal parking lane of Taylor Street when both collisions occurred.* It cannot be held [the third driver] reasonably should have foreseen that a drunken driver, [the fourth driver], would come driving through the same lane of traffic in which parking was permitted and collide with his vehicle already situated in that lane in the same manner as any legally parked car would have been.

452 N.E.2d at 159 (Emphasis ours). Our supreme court went to great pains to distinguish *Havert* factually from *Phillips v. Croy* (1977), 173 Ind.App. 401, 363 N.E.2d 1283. Our supreme court noted:

> In [*Phillips*], the injured plaintiff was found to be contributorially [sic] negligent when he was standing between two stopped trucks, one of which was struck by an oncoming car, and he like the [*Havert* plaintiffs] in the case at bar, was pinned between the two. *However, in that case the two stopped vehicles were in the driving lane* of a two lane road. In this case, the undisputed fact is that the [*Havert* plaintiffs] were standing between two vehicles in a lane *in which parking was legally permitted at the time of the accident.* This difference in facts alone is sufficient to distinguish the case at bar from the *Phillips* case.

*Havert,* 452 N.E.2d at 157 (emphasis in original).

*Havert* is distinguishable from the present case because Schnell and Johnson were not parked in a lane where parking was legally permitted. In fact, in the present case, despite Schnell's flat tire, Johnson and Schnell were illegally parked on the highway in a driving lane of an interstate bridge. Indiana Code 9-4-1-114(a) provides:

> No person shall stop, stand, or park a vehicle, except when necessary to avoid conflict with other traffic or to avoid conflict with law or the directions of a

police officer or traffic control device in any of the following places:

\*   \*   \*   \*   \*   \*

13. Upon any bridge or other elevated structure upon a highway or within a highway tunnel.

Schnell stopped because she had a flat tire and her car became difficult to steer. Johnson stopped to assist her. Neither can seriously assert that their respective stops on the highway fit one of the exceptions of the statute—to avoid conflict with traffic or law. Moreover, IND.CODE 9–4–1–112 reads:

(a) Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event, a sufficient unobstructed width of the roadway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of two hundred (200) feet in each direction upon such highway.

(b) This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.

We interpreted the predecessor of this statute to mean:

In our opinion, this statute means that *when it is impossible to park an automobile entirely off the highway,* a sufficient free passageway on the highway shall be left for other vehicles using the same, and the parked vehicle shall be

clearly in view for a distance of 200 feet in each direction. The facts in this case indicate *that the safe operation of his car required the appellee to stop.* ... We find nothing in the statute that can be interpreted to require the operator of a motor vehicle, the windshield of which is covered with wet snow, the windshield wipers inoperative because of the frozen condition, and the radiator boiling, to keep going until he finds a place where he can park his car entirely off the highway provided the place where he does park leaves sufficient clearance and meets with the statutory requirements as to view.

*Sheets v. Voland* (1954), 124 Ind.App. 695, 700, 119 N.E.2d 325, 327 (Emphasis added).[2]

▮▮▮ The violation of a motor vehicle safety statute creates a rebuttable presumption of negligence. *Reuille v. Bowers* (1980), Ind.App., 409 N.E.2d 1144. In determining whether the presumption of negligence raised by the violation of a motor vehicle statute has been rebutted, the issue is not whether it was possible for the motorist to comply with the statute because of an emergency or circumstances beyond her control, but rather, whether her conduct was that of a prudent person acting reasonably under the circumstances, a question generally for the jury. *Id.* The presumption of negligence may be rebutted by evidence that the person violating the safety regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law. *Witham v. Norfolk and Western Railway Co.* (1990), Ind., 561 N.E.2d 484.

The facts in the light most favorable to McKinney do not indicate that it was impossible for either Schnell or Johnson to park entirely off the highway. Schnell's car was not entirely disabled, only difficult

---

**2.** At the time of the accident, the statutes analyzed in the present case, I.C. 9–4–1–112 and 9–4–1–114, were in effect. They have since been repealed and replaced in substance by several statutes. P.L.2–1991, § 109. Of importance, the recodification has abandoned the "when it is practicable to stop ... off the highway" exception of I.C. 9–4–1–112 set out above. Now, I.C. 9–21–16–1 provides that the only exception to

the prohibition on parking on a highway is when a vehicle is disabled to the extent "that it is impossible to avoid stopping and temporarily leaving the disabled vehicle on the highway." Again, it is important to note that our legislature has not provided a similar exception to the prohibition on stopping on a highway bridge. I.C. 9–21–16–5.

to steer. Johnson does not even have that excuse. A jury could easily find that it was practicable for either or both drivers, desiring to comply with the safety regulation, to drive the rest of the way across the bridge and pull off into the emergency lane. Such a precaution would have, in all likelihood, avoided the accident and the resulting injuries and death in the present case.

The key to proximate cause analysis is foreseeability. Parking in the traveled part of an interstate highway is illegal, undoubtedly because of the manifest danger posed by following traffic. We can imagine no other reason for the 200 foot visibility provision in I.C. 9–4–1–112(a). Undoubtedly, our legislature believes that being struck by a vehicle coming down the highway is a reasonably foreseeable consequence of parking in the interstate.

We have held that negligence in parking a truck so that it protrudes upon the traveled portion of a highway was the proximate cause of the injuries suffered by a passenger in a car that struck the inappropriately parked truck. *Gibson Coal Co. v. Kriebs* (1971), 150 Ind.App. 173, 275 N.E.2d 821. We have no hesitation in concluding that the danger posed by traffic is an inherent and manifestly foreseeable danger involved in parking on the traveled portion of an interstate highway. We hold that a reasonable jury could easily find that the intervening cause of the accident (Brobst driving the church's truck into PSI's truck parked on the interstate) should reasonably have been foreseen and anticipated by Schnell and Johnson; and, therefore, we cannot conclude that their negligence, if any, in parking illegally on the interstate could not, as a matter of law, have been a proximate cause of the accident that resulted in McKinney's death. Accordingly, we hold that the question of whether Schnell's and Johnson's negligence, if any, constitutes a proximate cause of McKinney's death is a matter to be resolved by a jury.

## II.

Whether Schnell and PSI are entitled to summary judgment because Brobst's negligence is imputable to McKinney under a joint venture theory?

Schnell and PSI argue 1) that Brobst's contributory fault was greater than 50% as a matter of law, and 2) that Brobst's negligence is imputable to McKinney under a joint venture theory. Therefore, they reason, Schnell and PSI are entitled to summary judgment as a matter of law under Indiana's Comparative Fault Act, IND.CODE 34–4–33–4(b). *See generally, Forbes v. Walgreen Co.* (1991), Ind. App., 566 N.E.2d 90.

### A.

Schnell and PSI argue that the undisputed facts and circumstances of the accident indicate that Brobst was more than 50% at fault. Fault apportionment under the Indiana Comparative Fault Act is uniquely a question of fact to be decided by the jury. *T.M. Doyle Teaming Co., Inc. v. Freels* (N.D.Ill.1990), 735 F.Supp. 777; *Robbins v. McCarthy* (1991), Ind.App., 581 N.E.2d 929, *trans. denied.* In *Robbins,* we observed:

> [A]t some point the apportionment of fault may become a question of law for the court. But that point is reached only when there is no dispute in the evidence and the factfinder is able to come to only one logical conclusion. In our view, this record does not permit such a conclusion. ... The apportionment of fault under [the present circumstances] should therefore be left for the jury.

581 N.E.2d at 934, 935.

Similarly, under the undisputed facts of the present case, we cannot conclude that the jury could only logically come to the conclusion that Brobst's portion of the fault in the accident was greater than 50%. The possibility exists that a reasonable jury could properly find that the fault attributable to Schnell and Johnson for illegally parking in the interstate constituted at least 50% of the fault involved in the present accident. Incidentally, should the jury determine that Brobst's fault may not be allocated to McKinney (see subsection II.B. below), in order to exonerate Schnell and PSI from liability for McKinney's wrongful death the jury would be required to allocate 100% of the fault of the accident to Brobst (and 0% to Schnell and PSI). Therefore, we hold that the apportionment of fault in the present case should be decided by the jury.

## B.

Schnell and PSI assert that Brobst's negligence is imputable to McKinney because the pair were involved in a joint venture at the time of the accident. We disagree.

■ Whether a joint venture exists is generally held to be a question for the trier of fact, but what constitutes a joint venture is a question of law for the court. *Lafayette Bank & Trust Co. v. Price* (1982), Ind.App., 440 N.E.2d 759. Where the facts are undisputed and only a single reasonable inference can be drawn therefrom, the question is one of law. *Id.* Courts do not regard the joint venture doctrine with favor. W. Keeton, Prosser and Keeton on the Law of Torts, § 72, at p. 522 (5th Ed.1984). Prosser predicted that courts could be expected to continue to narrow the scope of the doctrine in order to ameliorate its rigors. *Id.* We are aware of at least one jurist who has advocated the abandonment of the doctrine of imputed negligence in view of his state's adoption of comparative fault. *Lightner v. Frank* (1986), 240 Kan. 21, 727 P.2d 430 (Lockett, J., concurring).

■ A passive passenger who exercises no right of control over the driver, cannot, under any theory of agency have the driver's negligence imputed to her. *Leuck v. Goetz* (1972), 151 Ind.App. 528, 280 N.E.2d 847. To establish a joint venture, there should be evidence of control over the management and operation of the vehicle and over the course and conduct of the trip. *Serna v. Kiger* (1978), 175 Ind.App. 566, 372 N.E.2d 1232. In *Leuck*, we held that there was no implication that Mr. and Mrs. Leuck had an equal voice in the management of the automobile, notwithstanding the fact that Mrs. Leuck, the passenger, had the right to give Mr. Leuck directions and had a duty to warn if she knew of an impending danger and that Mr. Leuck was unaware of its presence. *Id.,* 151 Ind.App. at 541, 280 N.E.2d at 855.

In the present case, McKinney was not permitted to drive the truck because he failed the DOT physical examination. However, McKinney had the right to give Brobst directions and, in fact, at least one time directed Brobst to drive past the McKinneys' home to drop off food. There-fore, we hold that a genuine issue of material fact exists whether McKinney exercised control over the operation of the church truck sufficient to impute Brobst's negligence to him under the joint venture doctrine.

■ Additionally, to establish a joint venture, there must be a pecuniary attribute in the common purpose of the trip. *Lafayette,* 440 N.E.2d 759. Indiana courts have consistently preserved the commercial flavor of the joint venture concept, defining it as 'an association of two or more persons to carry out a single business enterprise for profit.' *Id.* 440 N.E.2d at 762 (quoting *Beck v. Indiana Surveying Co.* (1981), Ind. App., 429 N.E.2d 264, 268). In the present case, Schnell and PSI assert that McKinney and Brobst had a pecuniary interest in the trip in that they were receiving charity from the church and they were reimbursed for the mileage on their personal cars in traveling to and from the church's food warehouse.

As noted earlier, it is undisputed that at the time of accident, McKinney and Brobst were performing volunteer work for their church by distributing food to the needy. Also undisputed was the fact that the receipt of assistance from the church was not contingent upon the performance of volunteer work. Hence, a reasonable jury would not be required to find that Brobst's and McKinney's association for this purpose is necessarily characterized as a business enterprise for profit. Any pecuniary interest McKinney and Brobst may have had in receiving assistance from the church or in being reimbursed for the mileage on their personal cars may reasonably be found to have been too remote to invoke the joint venture doctrine and cause Brobst's negligence to be imputed to McKinney. *See generally, Lafayette,* 440 N.E.2d 759. Therefore, we hold that a genuine issue of material fact exists regarding whether Brobst's negligence, if any, is appropriately imputed to McKinney under the joint venture doctrine.

## C.

■ Schnell and PSI next argue that the result of Brobst's lawsuit brought in

the Montgomery Circuit Court establishes that he was more than 50% at fault by operation of the doctrine of res judicata. In the earlier suit, Brobst brought suit against Schnell, PSI, and Johnson seeking to recover for the injuries he suffered in the accident. The McKinney estate was not a party to the lawsuit: the estate filed the present lawsuit seeking to recover for McKinney's wrongful death. The trial court awarded summary judgment in favor of Schnell, PSI, and Johnson and entered the following finding:

> The court finds based upon those facts that Eugene Brobst's negligence was the proximate cause of his own injuries, and if by some interpretation of the facts both his negligence and that of PSI or Schnell could be said to have contributed to his injuries, the court finds as a matter of law that Brobst's negligence was more than 50% of the fault giving rise to his own injuries and that therefore he is barred from any recovery from either Schnell, PSI, or Johnson.
>
> \*     \*     \*     \*     \*     \*
>
> The negligence, if any, of Schnell in stopping her disabled vehicle where it was on the bridge, the negligence, if any, of Johnson in stopping the PSI vehicle where he did on the bridge in order to be of aid and assistance to Mrs. Schnell did not cause the injury Brobst complains of.

By memorandum decision, we ordered that Brobst's appeal be dismissed because he failed to file his praecipe in a timely manner. *Corporation of the Presiding Bishop of Church of Jesus Christ of Latter–Day Saints, and Eugene Brobst v. Schnell, Public Service Co. of Indiana, Inc. and Johnson,* 597 N.E.2d 389 (Ind.App.1992). Brobst has until August 12, 1992 to file a petition for transfer.

We need not devote extensive analysis to the res judicata question. The parties agree that one of the elements necessary to invoke res judicata is that the controversy adjudicated in the former suit must have been between the parties to the present action or their privies. *T.R. v. A.W. by Pearson* (1984), Ind.App., 470 N.E.2d 95, *trans. denied.* Schnell and PSI concede that McKinney was not a party to the prior adjudication but instead assert that Brobst and McKinney were in privity because they

were involved in a joint venture at the time of the accident (see subsection II.B. above).

For purposes of issue preclusion, the element of privity contemplates a mutual or successive relationship to the same rights or interests which were the subject matter of the prior adjudication. *Id.* In the earlier lawsuit, Brobst sued for his injuries sustained in the accident. In the present lawsuit, McKinney's estate sues for McKinney's wrongful death. Moreover, McKinney's and Brobst's rights are in conflict as McKinney has named Brobst as a defendant in the present lawsuit and seeks to recover from him. Therefore, McKinney and Brobst were not in privity in the prior adjudication and the decision of the Montgomery Circuit Court is not res judicata in the present case.

### III.

Whether PSI can escape liability because Johnson parked his truck in the interstate in order to be a "Good Samaritan" in rendering assistance to Schnell?

▆▆▆   PSI argues:

Under Indiana law, if a volunteer stops to render assistance *at the scene of an accident,* he or she is immune from liability for injuries caused by the emergency care unless the injuries result from willful or intentional conduct on the part of the volunteer. IC 34–4–12–1. *See, also,* IC 34–4–12–2 and IC 34–4–12.2–1.

PSI's brief p. 37 (Emphasis ours).

> Indiana Code 34–4–12–1 provides that:
>
> Any person, who in good faith gratuitously renders emergency care *at the scene of an accident or emergency care to the victim thereof,* shall not be liable for any civil damages for any personal injury as a result of any act or omission by such person in rendering the emergency care or as a result of any act or failure to act to provide or arrange for further medical treatment or care for the injured person, except acts or omissions amounting to gross negligence or wilful [sic] or wanton misconduct.

(Emphasis supplied). Obviously, the above statute does not apply under the present circumstances because Johnson did not stop the PSI truck in the interstate to render emergency care at the scene of an

accident or to the victim thereto. There was no accident until Brobst crashed into the PSI truck.

Indiana Code 34–4–12–2 provides immunity to persons who have successfully completed a course of training in cardiopulmonary resuscitation who attempt to administer cardiopulmonary resuscitation, without pecuniary charge, to any person who is an apparent victim of acute cardiopulmonary insufficiency. Indiana Code 34–4–12.2–1 provides immunity under certain circumstances involving a threat related to a hazardous substance or compressed gas that creates the possibility of harm to any person, to property, or to the environment. Obviously, neither of these statutes clothe PSI with immunity under the present circumstances.

We are unaware of any authority supporting PSI's assertion of its "Good Samaritan" defense under the present circumstances in which Johnson parked PSI's truck in the driving lane of an interstate in order to help another motorist change a flat tire on her car which was not entirely disabled. Therefore, we must conclude that PSI's "Good Samaritan" defense is unavailing.

## CONCLUSION

Based on the above, we hold that the award of summary judgment in favor of PSI and Schnell was erroneous. We reverse and remand for trial.

BAKER and HOFFMAN, JJ., concur.

## OPINION ON JOINT PETITION FOR CLARIFICATION AND REHEARING

ROBERTSON, J.

Appellees Public Service Company of Indiana, Inc. [PSI] and Wanda R. Schnell have petitioned this court for clarification and rehearing of our written opinion designated for publication, *McKinney v. PSI and Schnell* (1992), Ind.App., 597 N.E.2d 1001, in which we reversed the summary judgment entered in favor of PSI and Schnell in the wrongful death action brought by Beverly McKinney, as the Administratrix of the Estate of Hugh L.

McKinney [McKinney]. PSI and Schnell assert that McKinney failed to timely file a praecipe in the trial court below and failed to file a record of proceedings and an appellant's brief in our court. Thus, PSI and Schnell argue, McKinney may not benefit from the relief granted on appeal and may not ultimately be awarded a judgment against PSI and Schnell. Instead, PSI and Schnell argue that, upon remand, they should be considered non-parties within the meaning of the Indiana Comparative Fault Act, IND.CODE 34–4–33–1 et seq. In other words, although fault may be allocated to PSI and Schnell, no judgment may be entered against them.

Indiana Appellate Rule 2(B) provides that all parties of record in the trial court shall be parties on appeal. Parties who fail to perfect an appeal in their own right are inactive parties on appeal. *Marshall v. Russell R. Ewin, Inc.* (1972), 152 Ind.App. 171, 282 N.E.2d 841, *trans. denied.*

Since parties to the action in the trial court are parties to the appeal by operation of A.R. 2(B), the failure to name all parties in the caption does not deprive the court of appeals of jurisdiction over all parties to the appeal. *State ex rel. Murray v. Estate of Heithecker* (1975), 165 Ind.App. 613, 333 N.E.2d 308. Even though the State's brief expressly stated that the Governor was not a party to the appeal, A.R. 2(B) operates of its own force to make all parties in the trial court parties on appeal whether such parties participate actively or not. *State v. Nixon* (1979), 270 Ind. 192, 384 N.E.2d 152.

Clearly, McKinney is a party to this appeal under A.R. 2(B) notwithstanding her failure to perfect an appeal in her own right. McKinney's inactive status in this appeal does not deprive this court of jurisdiction or diminish our ability to render relief to any party on appeal. Therefore, McKinney has forfeited no rights by failing to perfect an appeal in her own right and PSI and Schnell are not to be considered non-parties upon remand.

Petition for clarification granted: petition for rehearing denied.

BAKER, J. AND HOFFMAN, J. CONCUR.